[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 335.]

THE STATE OF OHIO, APPELLEE, *v*. JONES, APPELLANT.

[Cite as *State v. Jones*, 2001-Ohio-57.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 98-1483—Submitted October 10, 2000—Decided April 18, 2001.)

APPEAL from the Court of Common Pleas of Ashtabula County, No. 97-CR-221.

_____

FRANCIS E. SWEENEY, SR., J.

{¶ 1} On November 17, 1997, a dispatcher for the Ashtabula City Police Department advised officers that appellant Odraye G. Jones, an individual with outstanding felony warrants, had been spotted in the 900 block of West 43rd Street in Ashtabula. A week earlier, appellant had told his cousin, Jimmie Lee Ruth, that he "was facing a lot of time for robbing Isaac Coleman" and that he "was going to shoot at the police if they ever tried to arrest him."

{¶ 2} Officer William D. Glover, Jr., responded to the dispatcher's call. Officer Glover found appellant with a friend, Anthony Gene Barksdale, and Jimmie Lee Ruth walking together on West 43rd Street. Officer Glover followed the three men to the home of one of their friends, Flo Chapman. Barksdale knocked on the door of the Chapman home while Ruth and appellant stood behind him on the porch. Officer Glover approached the Chapman home, got out of his car, and beckoned to appellant. Ruth testified that Officer Glover told appellant, "[C]ome on, you know why I'm here. I don't want no problem. I'm just doing my job." Appellant jumped off the side of the porch and began running down the side of the Chapman home. Officer Glover pursued him. Not long after the pursuit commenced, appellant turned around, pulled a .38 caliber revolver from his pocket, and began firing shots at Officer Glover.

**{¶ 3}** After firing the first shot, appellant began to approach Officer Glover, firing several more shots. Officer Glover fell to the ground. Appellant turned and fled. He ran to a nearby fence and began to climb through a hole in it. Appellant then stopped, turned around, and ran back to where Officer Glover lay. Appellant kicked Officer Glover in the chest. The kick was done with such force that it left a large bruise on Officer Glover's chest that was visible to the paramedics who later treated Officer Glover at the scene. After kicking Officer Glover, appellant fled the scene.

**{¶ 4}** As Officer Glover was pursuing appellant, another Ashtabula City Police Officer, Robert Stell, was en route in his patrol car. Officer Stell located appellant several blocks away from the scene of the shooting, still running. Officer Stell got out of his car and ordered appellant to stop. Appellant ignored the command and continued running. Officer Stell pursued appellant on foot. Appellant led Officer Stell into a nearby apartment complex. He stopped at the door of an apartment and began attempting to force his way inside. While appellant managed to squeeze part of his body through the door, the occupant of the apartment prevented appellant from fully entering. As appellant was struggling to enter the apartment, Officer Stell began to approach appellant. Officer Stell drew his weapon and ordered appellant to the ground. Appellant did not immediately respond. Appellant threw his revolver behind him. The gun landed in some nearby shrubbery. Officer Stell again ordered appellant to the ground and, this time, appellant complied. Officer Stell held appellant at gunpoint until assistance arrived. Officers recovered the weapon and appellant was placed under arrest. This gun was later matched to fired cartridge casings recovered at the scene of the shooting, live cartridges found on appellant at the time of his arrest, and bullets taken from Officer Glover's body. All of the ammunition was hollow point. This type of ammunition is designed to open up on impact, causing larger wounds.

{¶ 5} Officer Glover had sustained gunshot wounds to the top of his head and to the area just below his right eye. He also sustained a bullet wound to his right shoulder. The gunshot wound to the top of Officer Glover's head and the wound to his face were both fired from a distance of less than one foot. The suddenness of appellant's attack had apparently caught Officer Glover by surprise. Officer Glover's duty weapon was found in Officer Glover's holster. The holster's strap was snapped securely shut.

{¶ 6} Paramedics transported Officer Glover to Ashtabula County Medical Center for emergency treatment. After Officer Glover's condition had been stabilized, he was life-flighted to Cleveland's Metro-Health Hospital. X-rays and CT scans revealed substantial damage to Officer Glover's brain. Officer Glover had severe cerebral swelling and profuse bleeding from his nose and mouth. Neurological assessments revealed minimal brain stem function. Officer Glover died from his gunshot wounds the following morning, November 18, 1997.

{¶ 7} The state charged appellant with the aggravated murder of Officer Glover with prior calculation and design. This charge carried with it four specifications. Under the first specification, appellant was charged with killing Officer Glover for the purpose of escaping apprehension for his earlier aggravated robbery offense (R.C. 2929.04[A][3]). The second and third specifications charged appellant with knowingly and purposefully causing the death of a law enforcement officer (R.C. 2929.04[A][6]). The fourth specification charged appellant with using a firearm in the killing of Officer Glover (R.C. 2941.145).

{¶ 8} Appellant was found guilty as charged in a jury trial, and the case proceeded to the penalty phase. The trial court merged the second and third death penalty specifications and instructed the jury to consider only the first and second.[1]

---

1. The fourth specification of which defendant was convicted, the firearm specification, is not an aggravating circumstance warranting the death penalty under R.C. 2929.04(A). The jury was therefore instructed to disregard this specification in the penalty phase.

Following a hearing, the jury recommended that appellant be sentenced to death. The trial court concurred. In addition to imposing the sentence of death, the trial court sentenced the defendant to a three-year mandatory term of imprisonment on the firearm specification.

{¶ 9} The cause is now before this court upon an appeal as of right.

{¶ 10} Appellant has raised fifteen propositions of law (see Appendix), which we have considered fully. We have considered the death penalty for appropriateness and proportionality and we have independently weighed the aggravating circumstances against the evidence presented in mitigation. For the reasons that follow, we affirm appellant's convictions and the sentence imposed.

PRETRIAL ISSUES

*Restrictions on Voir Dire*

{¶ 11} In his first proposition of law, appellant argues that he should have been permitted to ask prospective jurors about their views on specific mitigating factors. Appellant suggests that the trial court's refusal to permit this line of questioning left several jurors confused as to the meaning of mitigation. Appellant believes that his inability to ask about specific mitigating factors, coupled with juror confusion about the meaning of mitigation, limited his ability to uncover potential biases in prospective jurors and may have resulted in the empanelling of jurors who were unwilling to consider mitigating factors.

{¶ 12} During voir dire, a trial court is under no obligation to discuss, or to permit the attorneys to discuss, specific mitigating factors. See *State v. Wilson* (1996), 74 Ohio St.3d 381, 385-386, 659 N.E.2d 292, 300-301; *State v. Lundgren* (1995), 73 Ohio St.3d 474, 481, 653 N.E.2d 304, 315. Realistically, jurors cannot be asked to weigh specific factors until they have heard all the evidence and been fully instructed on the applicable law. *Id.* We reject appellant's first proposition of law.

*Juror Bias*

{¶ 13} In his third proposition of law, appellant contends that several errors committed during voir dire require us to order a retrial. First, appellant argues that the prosecutors' use of peremptory challenges to exclude those jurors who expressed reservations about the death penalty denied him his right to a fair and impartial jury. This argument lacks merit. It is well established that "death-qualifying a jury 'does not deny a capital defendant a trial by an impartial jury.' " *State v. Dunlap* (1995), 73 Ohio St.3d 308, 315, 652 N.E.2d 988, 995, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph two of the syllabus. Indeed, prosecutors may even exclude a juror for cause when the juror's views on capital punishment "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt* (1985), 469 U.S. 412, 433, 105 S.Ct. 844, 857, 83 L.Ed.2d 841, 857, followed in *Dunlap* at 315, 652 N.E.2d at 995.

{¶ 14} Second, appellant argues that the trial court erred in failing to excuse two jurors for cause. The first juror is Juror Lance McCollum, who appellant suggests should have been dismissed *sua sponte*. Juror McCollum testified during voir dire that he had discussed the case with his ex-father-in-law, the former chief of police of Ashtabula. McCollum stated that he was, to some degree, biased against the defense. However, McCollum also stated that he would try to disregard the conversation with his ex-father-in-law, would decide the case only on the evidence, and would accord the accused the usual presumption of innocence.

{¶ 15} We find no error in the trial court's decision not to excuse Juror McCollum. The conversation between McCollum and his ex-father-in-law did not, by itself, require McCollum's exclusion. While fairness requires that jurors be impartial, jurors need not be totally ignorant of the facts and issues involved. *State v. Sheppard* (1998), 84 Ohio St.3d 230, 235, 703 N.E.2d 286, 292. The trial court was entitled to accept McCollum's assurances that he would be fair and impartial and would decide the case on the basis of the evidence. "[D]eference must be paid

to the trial judge who sees and hears the juror." *Wainwright*, 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853. Furthermore, appellant has waived any potential error by failing to challenge the prospective juror at trial. *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685.

{¶ 16} Appellant also contends that the trial court erred in denying a challenge for cause brought against another prospective juror, a Mr. Shears, who testified during voir dire that, according to his religious beliefs, one who takes the life of another should "automatically" lose his own life. However, Mr. Shears further testified that he would follow the law and that he was capable of considering a penalty less than death.

{¶ 17} Here again, the trial court's determination that Juror Shears's scriptural beliefs would not prevent or impair his ability to perform his duties as a juror is entitled to deference. *Wainwright*, 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853. Where, as here, a juror gives conflicting answers, it is for the trial court to determine which answer reflects the juror's true state of mind. *State v. Webb* (1994), 70 Ohio St.3d 325, 339, 638 N.E.2d 1023, 1035-1036. Appellant's third proposition of law is overruled.

*Change of Venue*

{¶ 18} Appellant argues in his fourth proposition of law that the trial court's denial of his request to change venue violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Appellant based his request for a change of venue on the fact that only a handful of the original jury pool were African-Americans and that none of these individuals found their way onto the jury. Defense counsel pointed out to the trial court that the demographics of Ashtabula County resulted in African-Americans being unable to serve. Defense counsel noted that in Ashtabula County, there is only one central area where most African-Americans live and that this is the area in which the crime occurred. Thus, appellant's counsel argued, holding the trial in Ashtabula County virtually

6

eliminated African-Americans as potential jurors because most people in the area were either aware of the details of the crime or knew the parties or their families. The trial court rejected appellant's request, relying upon a recent decision from this court, *State v. Moore* (1998), 81 Ohio St.3d 22, 28, 689 N.E.2d 1, 9, which held that it is constitutional to rely upon voter registration rolls as exclusive sources for jury selection, as the trial court did in the instant case.

{¶ 19} "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690, 697. However, the Sixth Amendment does not require that petit juries "mirror the community and reflect the various distinctive groups in the population." *Id.* at 538, 95 S.Ct. at 702, 42 L.E.2d at 703. Under the Sixth Amendment, "[d]efendants are not entitled to a jury of any particular composition, * * * but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.*

{¶ 20} In *Duren v. Missouri* (1979), 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579, the United States Supreme Court held that in order to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587. Accord *State v. Fulton* (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus.

**{¶ 21}** In reviewing the propriety of appellant's arguments concerning the jury venire in the instant case, we find that appellant has failed to establish all of the elements of a prima facie violation of the fair cross-section requirement.

**{¶ 22}** Appellant has satisfied the first prong of the *Duren* analysis. For purposes of the fair cross-section analysis, African-Americans are a distinctive group. *United States v. Buchanan* (C.A.6, 2000), 213 F.3d 302, 310; *United States v. Rioux* (C.A.2, 1996), 97 F.3d 648, 654. However, appellant has not satisfied the remaining prongs of *Duren*. With respect to the second prong, for example, appellant has come forward with no evidence to suggest that African-Americans in Ashtabula County are unfairly represented in venires in relation to their number in the community. He merely alleges that African-Americans were not adequately represented on his particular venire and jury.

**{¶ 23}** Even if the appellant's venire was underrepresentative, the appellant has not presented any evidence of "systematic exclusion" as required under the third prong of *Duren*. Appellant must do more than show that his particular panel was unrepresentative. Where, as here, the trial court relies upon voter registration lists, the defendant-appellant "must demonstrate that the voter-registration qualifications are suspect, or that the jury-selection procedure is administered in a discriminatory manner." *United States v. Ireland* (C.A.8, 1995), 62 F.3d 227, 231. There is nothing inherently unconstitutional about using voter-registration rolls as exclusive sources for jury selection. *Moore*, 81 Ohio St.3d at 28, 689 N.E.2d at 9. Because appellant has failed to demonstrate systematic discrimination, we reject his Sixth Amendment claim.

**{¶ 24}** A defendant may also bring a federal equal protection challenge to the selection and composition of the petit jury. *Fulton*, 57 Ohio St.3d at 123-124, 566 N.E.2d at 1200, citing *Duren*, 439 U.S. at 368, 99 S.Ct. at 670, 58 L.Ed.2d at 589, fn. 26. To establish this equal protection claim, the defendant must "adduc[e] statistical evidence which shows a significant discrepancy between the percentage

of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose." *Id*. This evidence is then subject to rebuttal evidence suggesting that either no discriminatory purpose was involved or that such purpose had no "determinative effect." *Id.; Duren*, 439 U.S. at 368, 99 S.Ct. at 670, 58 L.Ed.2d at 589, fn. 26.

{¶ 25} The appellant has offered no statistical evidence showing a discrepancy between the percentage of African-Americans in Ashtabula County and the percentage of African-Americans on jury venires. We therefore reject appellant's equal protection argument. Having rejected appellant's arguments under the Sixth and Fourteenth Amendments, we find that the trial court did not err in denying appellant's motion for a change of venue.

### Choice of Counsel

{¶ 26} In his fifth proposition of law, appellant argues that the trial court denied him the right to counsel guaranteed under the Sixth Amendment to the United States Constitution. On May 14, 1998, approximately two hours after the jury was sworn, Attorney David Per Due filed an entry of appearance with the trial court. The following morning, a hearing was held. Present at this hearing were appellant's court-appointed counsel, the prosecution, and Per Due. Appellant indicated to the trial court that he wanted Per Due to represent him. Appellant stated that he had a "conflict of interest" with the court-appointed attorneys who had been representing him to that point. Specifically, appellant felt that his court-appointed attorneys were "mostly concerned with saving [his] life." He further stated that "if [they] can't win the case for me, then [they] can't do nothing for me." Appellant's court-appointed attorneys explained to the trial court that their relationship with the appellant had been "pretty good" and that there existed an open line of communication between themselves and appellant. They acknowledged appellant's concern that they were not concentrating upon acquittal. They further noted that appellant was concerned that the relationship between themselves and the

prosecution had, to that point, been too cordial. Appellant concurred with this assessment.

{¶ 27} The trial court offered to let Per Due assist appellant's court-appointed counsel. However, the trial court would not allow Per Due to act as lead counsel because he had not been death-penalty certified by this court. When the court asked Per Due if he would be ready to commence with trial the following Monday, he responded, "Absolutely not." Instead, Per Due requested a four-month continuance. He further indicated that he would be unwilling to assist appellant's court-appointed attorneys as third counsel.

{¶ 28} The court denied Per Due's motions for entry and a continuance, concluding that the relationship between appellant and his court-appointed attorneys did not warrant a change in counsel. The court further concluded that the request for continuance was made in bad faith and for purposes of delay. The trial court noted that there had never been, up to that point, any indication that there was a lack of cooperation or trust between appellant and his attorneys.

{¶ 29} "The grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 43, 423 N.E.2d 1078, 1080. In evaluating a motion for a continuance, a trial court should consider, *inter alia*, the length of the delay requested; the inconvenience to the litigants, witnesses, opposing counsel, and the court; and whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived. *Id*. at 67-68, 21 O.O.3d at 43, 423 N.E.2d at 1080.

{¶ 30} The trial court acted within the bounds of its discretion in denying the motion for continuance. Because the trial had already commenced, the lengthy delay requested by appellant and Per Due would have greatly inconvenienced everyone involved in the case, including the witnesses, the prosecution, the trial

court, and the jury, which had already been sworn. Given the timing of the motion, and the fact that appellant had never, up to that point, expressed any concerns about his court-appointed counsel, it was reasonable for the trial court to conclude that the continuance was requested in bad faith and for purposes of delay.

{¶ 31} Because Per Due adamantly refused to immediately proceed with trial, the trial court's refusal to grant the continuance effectively denied appellant the services of Per Due. We reject appellant's contention that this denial violated his Sixth Amendment right to counsel.

{¶ 32} "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States* (1988), 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148. Thus, "[a] defendant has only a *presumptive* right to employ his own chosen counsel." (Emphasis *sic*.) *State v. Keenan* (1998), 81 Ohio St.3d 133, 137, 689 N.E.2d 929, 937. Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145, 148. In addition, courts should "balanc[e] * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id*. Decisions relating to the substitution of counsel are within the sound discretion of the trial court. *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700, 100 L.Ed.2d at 152.

{¶ 33} The trial court conducted an extensive inquiry into the appellant's relationship with his court-appointed counsel. The record supports the trial court's determination that any problems between appellant and his attorneys had not led to

a total lack of communication. Indeed, both appellant and his attorneys agreed that the lines of communication between them were open. In balancing the accused's right to the representation of his chosen counsel against the interests of the public in the prompt and efficient administration of justice, the trial court correctly found that the public's interests outweighed those of the appellant. Accordingly, we find no abuse of discretion in the trial court's refusal to substitute Per Due for court-appointed counsel. We must therefore overrule appellant's fifth proposition of law.

TRIAL ISSUES

*Admissibility of Evidence*

{¶ 34} In his sixth proposition of law, appellant argues that the trial court erred during the guilt phase in admitting evidence concerning the efforts made to save Officer Glover's life. Specifically, appellant challenges the admission of evidence concerning Officer's Glover's difficulty in breathing, his internal bleeding and brain injury, and the consultations between medical personnel and Officer Glover's family. Appellant also challenges the introduction of Officer Glover's medical records. Appellant contends that this evidence was both irrelevant and unduly prejudicial. Because appellant's counsel failed to object to the admission of this evidence at trial, he now waives all but plain error. *State v. Joseph* (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 291. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." *Id*.

{¶ 35} For the most part, the medical evidence that appellant now challenges illustrated the nature and circumstances of the crime, including the physical condition and circumstances of the victim. This type of evidence is relevant and admissible. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212, 218. "The victi[m] cannot be separated from the crime." *Id*. at 420, 613 N.E.2d at 218-219. Furthermore, evidence detailing the impact of the crime on the victim's family is admissible when, as here, it is coupled with evidence

depicting the circumstances surrounding the crime. *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 440, 650 N.E.2d 878, 883.

{¶ 36} Assuming, *arguendo*, that the medical evidence admitted by the trial court was unduly prejudicial or cumulative in nature, we find that its admission does not constitute plain error. There is no doubt that the jury would have convicted appellant even if it had never been presented with this evidence. The evidence produced at trial clearly established that the appellant committed the charged crimes. As for admission of this medical evidence at the sentencing phase, we find that, given the severity of the aggravating circumstances, admission of the medical evidence could not have had a determinative effect upon the trial court's sentencing decision. In sum, we conclude that admission of the medical evidence, even if error, did not work to the material prejudice of the appellant. Therefore, appellant's sixth proposition of law is overruled.

{¶ 37} In his seventh proposition of law, appellant points to three items of evidence that he believes should not have been admitted at trial. Appellant contends that the admission of this evidence constituted reversible error.

{¶ 38} The first item of evidence consists of testimony from Officer Stell, the arresting officer. On direct examination, the prosecution examined Officer Stell regarding the day of the shooting and the moment at which he recognized appellant and began his foot pursuit. The prosecution asked Officer Stell to explain how he was able to recognize appellant. Officer Stell responded, "[F]rom times we have had him in our jail." Defense counsel objected. The trial court sustained the objection and instructed the jury to disregard Officer Stell's comment about appellant's being in jail.

{¶ 39} Appellant also challenges testimony from Anthony Barksdale. During the prosecution's redirect examination of this witness, the prosecution asked whether the witness had been given a lie detector test. Defense counsel objected, but before the court could rule, the witness responded affirmatively. The

trial court sustained the objection and instructed the jury to disregard the question. The trial court also admonished the prosecution not to make any further references to the lie detector test.[2] The defense counsel moved the trial court for a mistrial. The trial court did not grant this motion.

{¶ 40} With respect to the testimony of both Officer Stell and Anthony Barksdale, we find no error in the trial court's reliance upon curative instructions and its refusal to grant a mistrial in response to Barksdale's testimony. The jury is presumed to have followed the court's instructions. *State v. Raglin* (1998), 83 Ohio St.3d 253, 264, 699 N.E.2d 482, 492.

{¶ 41} Finally, appellant argues that the trial court erred in admitting certain "inflammatory statements" made by appellant. Specifically, appellant refers to the following statement he made just prior to arraignment: "If I had my SKS [Russian assault rifle], I would have killed 16 of you mother fuckers," referring to the police. Appellant also objects to the admission of his statement to Jimmie Lee Ruth that appellant "was going to shoot at the police if they ever tried to arrest him." Appellant contends that, under Evid.R. 403(A),[3] these statements should not have been admitted because their potential prejudicial effect substantially outweighed their probative value. We disagree.

{¶ 42} Both statements were of considerable probative value. Appellant's first statement regarding his assault rifle and what he would do with it helped to prove appellant's identity as the shooter in this case and helped to establish his intent to kill a police officer. Similarly, appellant's statement to Jimmie Lee Ruth helped to establish that he killed Officer Glover with prior calculation and design.

---

2. In Ohio, the results of a polygraph examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment only when the prosecution and defense stipulate to their admissibility. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus.
3. Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

It also tended to support the state's charges that appellant's specific purpose was to kill a police officer and that he killed to escape apprehension for aggravated robbery. We find no abuse of discretion in the trial court's determination that the probative value of these statements outweighed their potential prejudicial effect. We reject appellant's seventh proposition of law.

*Sufficiency of the Evidence*

{¶ 43} In his eighth proposition of law, appellant argues that the state failed to prove, beyond a reasonable doubt, that he killed Officer Glover with prior calculation and design. According to appellant, the trial court erred in submitting this issue to the jury.

{¶ 44} When reviewing the sufficiency of the evidence to support a criminal conviction, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Stallings* (2000), 89 Ohio St.3d 280, 289, 731 N.E.2d 159, 171. "[T]he phrase 'prior calculation and design' * * * indicate[s] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *State v. Taylor* (1997), 78 Ohio St.3d 15, 19, 676 N.E.2d 82, 88. The amount of care or time that the defendant spends in planning and analyzing the crime are not critical factors in themselves; however, they "must amount to more than momentary deliberation." *Id.* In short, there is no bright-line test for determining the existence of prior calculation and design. *Id.* at 20, 676 N.E.2d at 89. "[E]ach case turns on the particular facts and evidence presented at trial." *Id.*

{¶ 45} Whether a defendant's prior statement of intent to kill a police officer constitutes evidence of prior calculation and design depends largely upon the totality of other facts and circumstances surrounding the killing. In *State v. Reed* (1981), 65 Ohio St.2d 117, 120-121, 19 O.O.3d 311, 313-314, 418 N.E.2d 1359, 1362-1363, we held that a defendant's isolated statement that "if a cop got in his

way [during a robbery] he would blow him away" did not, by itself, establish prior calculation and design when the totality of the facts and circumstances indicated that the killing resulted from an instantaneous deliberation. More recently, in *State v. White* (1998), 82 Ohio St.3d 16, 24, 693 N.E.2d 772, 779-780, we suggested that such statements could be used to establish prior calculation and design. The distinguishing factor in the *White* decision was the presence of other evidence establishing prior calculation and design. Unlike in *Reed*, the defendant's threat to kill a police officer in *White* was repeated several times. In *White*, there was also evidence presented at trial indicating that the defendant, who was on probation, would do whatever necessary to avoid being returned to prison. Here, as in *White*, the totality of facts and circumstances surrounding the killing, including the manner in which appellant killed Officer Glover, clearly indicates that appellant's act of killing was not an instantaneous decision and that his prior statement of intent to kill a police officer was not merely an idle threat. Accordingly, we are willing to consider appellant's threat as evidence of prior calculation and design.

{¶ 46} Viewing the evidence in the light most favorable to the prosecution, we find that the jury could have found the element of prior calculation and design proven beyond a reasonable doubt. Shortly before the murder, appellant informed his cousin that he "was going to shoot at the police if they ever tried to arrest him." On the day of the murder, appellant was armed with a .38 caliber revolver. When approached by the police, appellant followed up on his promise to his cousin, executing Officer Glover with two point-blank gunshots to the head. This evidence clearly establishes, beyond a reasonable doubt, that appellant killed Officer Glover with prior calculation and design.

{¶ 47} Appellant also argues in his eighth proposition of law that the state failed to prove that he killed Officer Glover for the purpose of escaping apprehension for aggravated robbery, the first death penalty specification.

Appellant contends that the prosecution bore the burden of proving his commission of the aggravated robbery offense beyond a reasonable doubt.

{¶ 48} The state argues that appellant waived this claim by failing to raise the issue at trial. We disagree. Appellant's "not guilty" plea preserved his right to object to the alleged insufficiency of the evidence proving the prior offense. See *State v. Carter* (1992), 64 Ohio St.3d 218, 223, 594 N.E.2d 595, 599.

{¶ 49} R.C. 2929.04 sets forth the criteria for imposing the sentence of death for the commission of a capital offense. The statute provides that the death penalty may be imposed when it is proven beyond a reasonable doubt that the capital offense "was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense *committed by the offender*." (Emphasis added.) R.C. 2929.04(A)(3). Appellant contends that, under this statute, the state must prove that the defendant committed the offense for which he sought to avoid apprehension by proof beyond a reasonable doubt. We agree.

{¶ 50} Appellant's interpretation of R.C. 2929.04(A)(3) is consistent with both the statute's plain language and established constitutional law. R.C. 2929.04(A) plainly states that all of the aggravating circumstances listed therein, including that contained in subsection (A)(3), must be proven beyond a reasonable doubt. Indeed, conviction under any lesser standard of proof would be inconsistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. It is axiomatic that the state must prove each and every element of an offense beyond a reasonable doubt. See *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. We find that the defendant's commission of the prior offense constitutes an essential element of the R.C. 2929.04(A)(3) specification. Had the General Assembly intended that the death penalty be applied to those who simply attempt to avoid apprehension on a warrant, it would not have included the words "committed by the offender."

**{¶ 51}** We conclude, however, that in the case *sub judice*, the state proved, beyond a reasonable doubt, that appellant had committed the prior offense for which he sought to avoid apprehension. The state introduced evidence that a week before the killing, appellant told his cousin Jimmie Ruth that he "was facing a lot of time for robbing Isaac Coleman." Appellant's admission proves beyond a reasonable doubt that he committed the prior offense of aggravated robbery. We therefore affirm appellant's conviction on the R.C. 2929.04(A)(3) specification.

*Trial Phase Instructions*

**{¶ 52}** In his ninth proposition of law, appellant challenges three jury instructions. Because appellant failed to object to these instructions during the trial, he now waives all but plain error. *Joseph*, 73 Ohio St.3d at 455, 653 N.E.2d at 291.

**{¶ 53}** Appellant challenges the trial court's reasonable doubt instruction, which the court recited verbatim from R.C. 2901.05(D). Appellant argues that this instruction unconstitutionally permits juries to convict upon a standard of proof below proof beyond a reasonable doubt. We summarily reject this argument. We have repeatedly affirmed the constitutionality of R.C. 2901.05(D)'s definition of reasonable doubt. See *State v. Hessler* (2000), 90 Ohio St.3d 108, 115, 734 N.E.2d 1237, 1246; *State v. Getsy* (1998), 84 Ohio St.3d 180, 202, 702 N.E.2d 866, 888.

**{¶ 54}** Appellant also challenges the trial court's instruction on the two separate elements of purpose and prior calculation and design. Appellant argues that the court's instruction equated the two concepts and essentially directed a verdict on the element of prior calculation and design.

**{¶ 55}** The record does not support appellant's contention that the trial court equated purpose with prior calculation and design. The court defined "purpose" as "a decision of the mind to do an act with a conscious objective of producing a specific result." It noted that the terms "purpose" and "intent" are synonymous. While the court went on to explain how the element of "prior calculation and design" relates to the element of "purpose," the court's instruction in no way

confused these elements. The court explained that "prior calculation and design" means that "the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and means with which to cause the death of another." The court further explained that prior calculation and design includes "planning," "a scheme designed to carry out the calculated decision to cause the death." Finally, the court noted that prior calculation and design does not include "spur of the moment" decisions. We find no error in these instructions. The instructions are consistent with the standardized Ohio Jury Instructions and our own definitions of these elements. See 4 Ohio Jury Instructions (1997), Sections 409.01 and 503.01(A)(4); R.C. 2901.22(A) (defining "purposeful" action); State v. Cotton (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph three of the syllabus (defining "prior calculation and design").

{¶ 56} Finally, appellant argues that the trial court improperly shifted the burden of proof from the state to the defense when it instructed the jury to deliberate on the guilt "or innocence" of appellant. The trial court instructed the jury that in the guilt phase of the trial they should "not consider at this time or in any way discuss the subject matter of punishment." The court instructed the jury that its duty was "confined to the determination of the guilt or innocence of the defendant." Appellant contends that a reasonable jury would have understood this instruction to mean that the defendant bore the burden of putting forward evidence of his innocence.

{¶ 57} We disagree with appellant's suggestion that the trial court's instruction effectively shifted the burden of proof from the state to the defendant. Any reasonable juror would have taken the instruction as nothing more than a warning not to consider punishment during the guilt phase. "A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of

the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. Given the trial court's repeated instruction to the jury that the state bore the burden of proving guilt beyond a reasonable doubt, no reasonable juror could have concluded that the single instruction set forth above shifted the burden of proof to the defendant.

SENTENCING ISSUES

*Duplicative Death Penalty Specifications*

{¶ 58} In his tenth proposition of law, appellant argues that the trial court erred in failing to merge the R.C. 2929.04(A)(3) and (A)(6) death penalty specifications. These specifications represent, respectively, killing to escape apprehension and killing a law enforcement officer.

{¶ 59} Where two or more aggravating circumstances arise from the same act or indivisible course of conduct, they are duplicative and must be merged for purposes of sentencing. *Jenkins*, 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph five of the syllabus. Merger is not required when the aggravating circumstances arise from a divisible course of conduct. *State v. Robb* (2000), 88 Ohio St.3d 59, 85, 723 N.E.2d 1019, 1047.

{¶ 60} Appellant's act of fleeing and his killing of Officer Glover were part of a divisible course of conduct. Therefore, merger of the R.C. 2929.04(A)(3) and (A)(6) death penalty specifications was unnecessary. Appellant's purpose to escape apprehension for his prior robbery offense is demonstrated by his fleeing when Officer Glover approached him at the Chapman home. Although appellant killed Officer Glover after fleeing, the circumstances surrounding the killing reveal that it was a distinct, divisible act. When appellant had drawn his weapon and aimed it at Officer Glover, he had stopped running. Appellant fired shots at Officer Glover while walking toward him. Appellant's killing of Officer Glover was clearly a separate act, which demonstrated a separate animus. The killing was in no way implicit in appellant's decision to flee Officer Glover. *Id*. See, also, *White*, 82 Ohio

St.3d 16, 693 N.E.2d 772 (R.C. 2929.04[A][3] and [A][6] specifications treated as separate).

*Penalty Phase Instructions*

{¶ 61} In his twelfth proposition of law, appellant challenges several of the trial court's instructions to the jury at the penalty phase. First, appellant argues that the trial court erred when it instructed the jury that "only that testimony and evidence which was presented in the first phase that is relevant to the aggravating circumstances [appellant] was found guilty of committing, or to any of the mitigating factors that will be described below, is to be considered by you." Appellant suggests that this instruction improperly permitted the jury to determine what evidence was relevant. Because appellant failed to raise this issue in the trial court, he waives all but plain error. *Joseph*, 73 Ohio St.3d at 455, 653 N.E.2d at 291. We find no plain error here.

{¶ 62} The trial court's instruction was ambiguous as to whether relevance was to be determined by the court or the jury. We agree that the trial court's instruction could reasonably be interpreted by one or more members of the jury as implying that it was their responsibility to determine the relevance of evidence presented during the first phase of trial. Of course, jurors may also have interpreted the court's statement as instructing them to consider only that evidence that the court deemed relevant. This interpretation is particularly plausible given that immediately after the trial court gave the challenged instruction, it further instructed the jury that it would allow it to consider during deliberations only those exhibits which it, as the trial court, determined to be relevant.

{¶ 63} To the extent that the jury interpreted the trial court's instruction as allowing them to determine relevancy, the trial court misled the jury. It is "the trial court's responsibility, not the jury's, to determine what evidence [is] relevant." *Getsy*, 84 Ohio St.3d at 201, 702 N.E.2d at 887. We find, however, that the trial court's misstatement did not prejudice the outcome of this case. Much of the trial

phase evidence was relevant at the sentencing phase because it was related to the aggravating circumstances, the nature and circumstances of the offense, and the asserted mitigating factors. See *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, syllabus. Moreover, we find that the aggravating circumstances in this case outweigh the mitigating evidence. Therefore, no basis exists for finding outcome-determinative plain error in the trial court's instruction on relevance.

{¶ 64} Appellant also challenges, in his twelfth proposition of law, the trial court's denial of defense counsel's requested instruction that a sole juror could prevent a verdict of death. We find no error in the trial court's instruction. Trial courts must instruct juries that "[i]n Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors." *State v. Brooks* (1996), 75 Ohio St.3d 148, 162, 661 N.E.2d 1030, 1042. In advising juries of the need for a unanimous verdict, no specific language has to be used as long as the "substance" of what the jury must determine is included in the charge given. See *State v. Goff* (1998), 82 Ohio St.3d 123, 129, 694 N.E.2d 916, 922.

{¶ 65} The substance of the trial court's charge adequately conveyed the need for unanimity. The court instructed the jury that "[i]n order for you to decide that the sentence of death shall be imposed upon [the appellant], the State of Ohio has the burden to prove to each member of this jury beyond a reasonable doubt that the aggravating circumstances * * * outweigh the factors in mitigation." At another point in its charge, the trial court instructed that "all twelve members" of the jury had to find that the aggravating circumstances outweigh mitigation before death could be imposed. Finally, the trial court instructed that the jury had to consider life sentence options "if any one or more of you conclude the State has failed to prove that the aggravating circumstances outweigh the mitigating factors." The need for a unanimous verdict was more than adequately conveyed by these instructions.

**{¶ 66}** Finally, appellant argues that the trial court denied him due process of law when it failed to instruct the jury on the issue of sympathy. We summarily reject this argument. It is well established that sympathy and mercy are not relevant sentencing criteria. See *Taylor*, 78 Ohio St.3d at 30, 676 N.E.2d at 96; *State v. Allen* (1995), 73 Ohio St.3d 626, 638, 653 N.E.2d 675, 687.

*Constitutional Error in the Trial Court's Sentencing Opinion*

**{¶ 67}** In his fourteenth proposition of law, appellant challenges two aspects of the trial court's sentencing opinion. First, appellant contends that the court failed to properly consider psychological evidence submitted under R.C. 2929.04(B)(7). R.C. 2929.04(B)(7) requires trial courts to consider, in addition to the specific mitigating factors set forth in R.C. 2929.04(B), "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

**{¶ 68}** We conclude that the trial court thoroughly considered the evidence submitted by the appellant under R.C. 2929.04(B)(7). The trial court made specific findings as to the existence of appellant's psychological disorders as required under R.C. 2929.03(F). The court found that this mitigation evidence was entitled to little weight. Specifically, the court weighed against appellant's mitigation evidence other evidence that appellant's psychological disorders did not prevent him from understanding the criminality of his conduct or conforming his conduct to the requirements of the law. The trial court concluded that this evidence, along with evidence that appellant was fairly sophisticated and intelligent, required that the psychological disorders be accorded little weight. The court acted well within its discretion in making this determination. " '[T]he assessment and weight to be given mitigating evidence are matters for the trial court's determination.' " *State v. Mitts* (1998), 81 Ohio St.3d 223, 235, 690 N.E.2d 522, 532, quoting *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305.

**{¶ 69}** Appellant contends that the trial court's reference to appellant's ability to conform his conduct to the requirements of the law suggests that the court

confused appellant's psychological evidence, offered by the defense under the R.C. 2929.04(B)(7) catchall provision, with evidence offered under R.C. 2929.04(B)(3), a provision that makes the defendant's ability to conform his conduct to the requirements of the law a mitigating factor. Appellant's argument lacks any merit. We fail to see how the trial court's alleged weighing of the psychological evidence under (B)(3) rather than (B)(7) could possibly have prejudiced the appellant, especially in light of the fact that the trial court weighed the psychological evidence against other evidence unrelated to (B)(3), namely, appellant's intelligence. In any event, "[t]he process of weighing mitigating factors * * * is a matter for the discretion of the individual decisionmaker." *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132. We find no abuse of that discretion here.

{¶ 70} In his fourteenth proposition of law, appellant also argues that the trial court improperly accorded "exceptional weight" to the fact that the victim in this case was a law enforcement officer—the R.C. 2929.04(A)(6) aggravating circumstance. Appellant accuses the trial court of creating "a kind of 'super' aggravating circumstance that no amount of mitigation could outweigh." Specifically, appellant challenges the trial court's statement that "the act of killing a police officer who, in the pursuit of his duties is attempting to apprehend a person accused of a felony crime, strikes at the very heart of the justice system."

{¶ 71} We reject appellant's argument. The trial court never suggested that the mitigating evidence in this case could not outweigh this aggravating factor. The trial court's statement regarding the severity of killing a police officer was not improper. Courts are certainly entitled to consider the gravity of the aggravating circumstances. See, *e.g.*, *State v. Keene* (1998), 81 Ohio St.3d 646, 671, 693 N.E.2d 246, 266-267 (noting that the killing of a witness in order to avoid prosecution is an act that strikes at the heart of the criminal justice system); *State v. Coleman* (1999), 85 Ohio St.3d 129, 145, 707 N.E.2d 476, 491.

PROSECUTORIAL MISCONDUCT

{¶ 72} In his eleventh proposition of law, appellant contends that prosecutorial misconduct at several stages of his trial denied him due process of law. First, appellant argues that the prosecution engaged in misconduct when, during voir dire, it informed prospective jurors that they could determine what evidence was mitigating. Because appellant failed to raise this objection during trial, he now waives all but plain error. *Joseph*, 73 Ohio St.3d at 455, 653 N.E.2d at 291.

{¶ 73} We find no error, plain or otherwise, in the prosecution's statements to prospective jurors regarding mitigation. The prosecution merely reminded prospective jurors that it was their duty to determine what evidence does in fact mitigate the appellant's crime and what weight to give this evidence. This was not improper. "Prosecutors can urge the merits of their cause and legitimately argue that defense mitigation evidence is worthy of little or no weight." *Wilson*, 74 Ohio St.3d at 399, 659 N.E.2d at 309. The prosecution's statements correctly summarized the law on mitigation. "[T]he jury * * * may properly choose to assign absolutely no weight to * * * evidence if it considers it to be non-mitigating." *State v. Steffen* (1987), 31 Ohio St.3d 111, 129, 31 OBR 273, 289, 509 N.E.2d 383, 399. Even if the prosecution's statements were improper, we can find no plain error here. Statements made during voir dire cannot reasonably be thought to affect sentencing verdicts. See *Darden v. Wainwright* (1986), 477 U.S. 168, 183-184, 106 S.Ct. 2464, 2472-2473, 91 L.Ed.2d 144, 158-159, fn. 15.

{¶ 74} Appellant also cites as prosecutorial misconduct the prosecution's remark, made in its opening statement of the penalty phase and essentially repeated in closing, that "there can be no mitigating factors which outweigh the aggravating circumstances of the murder of a police officer in order to escape apprehension for another crime or the murder of a police officer while doing his duty." Here again, appellant has waived all but plain error.

{¶ 75} We reject appellant's contention that the prosecution's statement constituted misconduct. As noted above, prosecutors are permitted to urge the merits of their cause and, in so doing, are permitted to argue that defense mitigation evidence is entitled to no weight. *Wilson*, 74 Ohio St.3d at 399, 659 N.E.2d at 309. It is difficult for prosecutors to argue vigorously for the death penalty without making what might arguably be statements of personal opinion. A prosecutor may offer his or her opinion if it is based on the evidence presented at trial. *State v. Stephens* (1970), 24 Ohio St.2d 76, 83, 53 O.O.2d 182, 186, 263 N.E.2d 773, 777. Finally, we note that any potential error here was cured by the trial court's instruction to the jury that statements and arguments made by the attorneys are not evidence. *State v. Palmer* (1997), 80 Ohio St.3d 543, 562, 687 N.E.2d 685, 702.

{¶ 76} Last, appellant argues that the prosecution engaged in misconduct when, during the cross-examination of a witness, it implied that appellant had been involved in another homicide. During the cross-examination of a witness named Charles See, the prosecution elicited information that an acquaintance of the appellant, Emasio Hull, had been involved in an altercation with the appellant and had, during this altercation, hit the appellant in the head with a hammer. The prosecution then asked the witness whether he was aware of the fact that, after this incident, Hull was murdered. Defense counsel objected. The trial court sustained the objection and informed the jury to disregard the question because Hull's murder had no relevancy to the matter before it.

{¶ 77} In light of the trial court's sustaining of defense counsel's objection and the trial court's subsequent instruction to the jury, we find no prejudicial error in the prosecution's question. Juries are presumed to follow trial court instructions. *Raglin*, 83 Ohio St.3d at 264, 699 N.E.2d at 492.

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 78} In his thirteenth proposition of law, appellant argues that he received ineffective assistance of counsel during the pretrial, trial, and penalty phases. To

win a reversal on the basis of ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*., paragraph three of the syllabus.

*Ineffective Assistance of Counsel at the Pretrial and Trial Phases*

{¶ 79} Appellant raises several alleged instances of ineffective assistance during the pretrial and trial phases. First, appellant contends that he received ineffective assistance of counsel when, during voir dire, his counsel failed to move that Juror McCollum be excused for cause on the basis of that juror's alleged bias. Above, we noted that juror McCollum indicated to the trial court that, if selected as a juror, he would follow the law and would assume appellant's innocence. We have already held that the trial court did not err in declining to excuse this juror *sua sponte*. Thus, defense counsel could quite reasonably have concluded that a motion to dismiss Juror McCollum for cause would not have been successful. "Counsel need not raise meritless issues or even all arguably meritorious issues." *Taylor*, 78 Ohio St.3d at 31, 676 N.E.2d at 97. The record reveals that defense counsel instead used one of its peremptory challenges to exclude Juror McCollum. These kinds of tactical decisions fall "well within the range of professionally reasonable judgments." *Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070, 80 L.Ed.2d at 701.

{¶ 80} As a second instance of ineffective assistance, appellant points to defense counsel's failure to object to the admission of evidence regarding Officer Glover's medical treatment and the efforts to save his life. We have already thoroughly discussed this issue and have concluded that this evidence was relevant

and admissible as evidence illustrating the nature and circumstances of the crime. Again, counsel need not raise meritless issues or even all arguably meritorious issues for that matter. *Taylor*, 78 Ohio St.3d at 31, 676 N.E.2d at 97. Accordingly, defense counsel's failure to object did not constitute deficient performance.

{¶ 81} Third, appellant challenges defense counsel's failure to move for merger of the second and third death penalty specifications until after the guilt phase of the trial had concluded, at which time defense counsel moved for, and was granted, merger. These death penalty specifications constituted duplicative aggravating circumstances under R.C. 2929.04(A)(6) and did in fact have to be merged. See *Jenkins*, 15 Ohio St.3d 164, 199-200, 15 OBR 311, 341-342, 473 N.E.2d 264, 296-297. However, we do not believe that defense counsel acted unreasonably in waiting until the penalty phase to move for merger. Certainly, this tactical decision caused no prejudice to the appellant.

{¶ 82} Finally, appellant argues that he received ineffective assistance when defense counsel failed to move for dismissal of the R.C. 2929.04(A)(3) death penalty specification. We have held that the prosecution proved each element of this specification by proof beyond a reasonable doubt. Accordingly, there was no basis for moving to dismiss this specification and, hence, no ineffective assistance of counsel. *Taylor*, 78 Ohio St.3d at 31, 676 N.E.2d at 97 (counsel need not raise meritless objections).

*Ineffective Assistance of Counsel at the Penalty Phase*

{¶ 83} Appellant raises four alleged instances of ineffective assistance at the penalty phase of his trial. First, appellant challenges defense counsel's failure to object when the trial court instructed the jurors that they had to determine what evidence was relevant. We have already examined this instruction and concluded that the instruction could reasonably have been interpreted by jurors to mean that they were to consider only evidence deemed relevant by the trial court. Certainly, defense counsel could reasonably have attached the same meaning to the trial

court's statement and declined to object for this reason. In any event, we have already determined that this instruction did not prejudice the outcome of the case.

{¶ 84} Second, appellant challenges defense counsel's failure to object when the prosecution informed jurors that no amount of mitigation could outweigh the killing of a police officer. We have already held that these statements from the prosecution were not improper. The statements did not warrant an objection.

{¶ 85} Third, appellant argues that defense counsel should have objected to allegedly "irrelevant" exhibits, photos, and medical evidence relating to Officer's Glover's wounds and treatment. We have concluded that much of this evidence was relevant and admissible because it illustrated the nature and circumstances of the crime. Moreover, given the serious nature of the aggravating circumstances, the admission of some or all of this evidence could not have affected the outcome of the trial.

{¶ 86} Finally, appellant argues that he was provided ineffective assistance when defense counsel failed to emphasize to the jury specific facts from mitigation exhibits submitted to the jury. Specifically, appellant challenges defense counsel's failure to point out that, just before appellant was born, a physician had referred to appellant's mother as noncommunicative and in need of guidance. Appellant also challenges defense counsel's failure to point out to the jury that appellant's mother had committed suicide by intentional drug overdose. The record indicates that appellant's defense counsel had presented an abundance of evidence regarding appellant's mother, including her inability to form an attachment with appellant and the effect her suicide had upon him. The subtle tactical choices that appellant now challenges were decisions that lay within the realm of professionally reasonable judgment. We further find that defense counsel's failure to highlight to the jury specific items of mitigation contained in exhibits submitted to it could not have affected the outcome of the trial, especially in light of the weight and gravity of the aggravating circumstances.

**{¶ 87}** We have reviewed each of appellant's alleged instances of ineffective assistance of counsel and conclude that appellant received constitutionally adequate representation at each phase of his trial. Accordingly, we reject appellant's thirteenth proposition of law.

CONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAW

**{¶ 88}** In his fifteenth and final proposition of law, appellant raises several constitutional challenges to Ohio's death penalty law, which we summarily reject. Appellant's arguments have been rejected in numerous previous decisions issued by this court. See, *e.g.*, *State v. Hill* (1996), 75 Ohio St.3d 195, 201, 661 N.E.2d 1068, 1076; *State v. Coleman* (1989), 45 Ohio St.3d 298, 308-309, 544 N.E.2d 622, 633-634.

INDEPENDENT SENTENCE EVALUATION

**{¶ 89}** Having considered appellant's propositions of law, we must now independently review the death sentence for appropriateness and proportionality. We find beyond a reasonable doubt that the balance of aggravating circumstances against mitigating factors in this case weighs in favor of a death sentence.

**{¶ 90}** Much of appellant's mitigation evidence focused upon his relationship with his mother. In mitigation, appellant presented testimony that he was born to an eighteen-year-old mother who foisted the bulk of his care onto others. Appellant's primary caregiver was his foster grandmother, Theresa Lyons. Appellant had no relationship with his father. Nor did appellant have any positive male role models in his life. Appellant's natural mother was a drug user. Her legal and substance abuse problems caused her to drift in and out of her son's life. When appellant was only six years old, his mother was incarcerated for theft. When appellant was thirteen, his mother died from a drug overdose, an apparent suicide. The testimony of several witnesses suggests that the death of his mother was a turning point in appellant's life. Appellant became involved with gangs and began to run afoul of the law. He was frequently truant from school until he was expelled.

Testimonial evidence in the record suggests that appellant suffers from antisocial personality and attachment disorders, which may have created in appellant an inability to empathize and a tendency to violate the rights of others.

{¶ 91} Appellant's mitigation evidence suggests that violence and death have characterized much of appellant's life. Both his grandmother and great-grandmother, for example, died from gunshot wounds. Like his mother, a cousin, who was a close friend to appellant, committed suicide. One of his own daughters died young. An uncle is in prison serving time for murder. At the age of sixteen, appellant was severely beaten and robbed by someone he had considered to be a friend.

{¶ 92} Nothing in the nature and circumstances of the offense mitigates the appellant's crime. A mere week before he killed Officer Glover, appellant professed to his cousin that he would kill any officer who attempted to arrest him. To this end, appellant armed himself with a .38 caliber revolver and loaded it with hollow point bullets, a particularly deadly form of ammunition. Appellant displayed chilling mercilessness in his killing of Officer Glover, firing the fatal shots at point-blank range. He then fled the scene, stopping only to kick the wounded and defenseless officer. Appellant surrendered only when all available means of escape had been exhausted.

{¶ 93} Upon review of the evidence in mitigation, it appears that appellant had a chaotic and troubled childhood. We find that appellant's background and personality disorders are entitled to some weight in mitigation. See *State v. Johnson* (2000), 88 Ohio St.3d 95, 123, 723 N.E.2d 1054, 1078. At the time he committed this offense, appellant was twenty-one years old. Appellant's relative youth is entitled to some, but minimal, weight in mitigation. *Id*. Nothing in the nature and circumstances of the crime is mitigating.

{¶ 94} We determine that the R.C. 2929.04(A)(3) and (A)(6) aggravating circumstances outweigh the mitigating factors presented. In order to escape

apprehension for his prior aggravated robbery offense, appellant knowingly killed a police officer who was, at the time, engaged in his professional duties. After considerable thought and review, we conclude that these aggravating circumstances outweigh the mitigating evidence beyond a reasonable doubt.

{¶ 95} We have undertaken a comparison of the sentence imposed in this case to those in which we have previously upheld the sentence of death and have found that the appellant's death sentence is neither excessive nor disproportionate to the sentence imposed in similar cases. See, *e.g*., *White*, 82 Ohio St.3d 16, 693 N.E.2d 772; *State v. Glenn* (1986), 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701.

{¶ 96} For the foregoing reasons, we affirm the judgment of the trial court and uphold the sentence of death.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur separately.

_____

**COOK, J., concurring.**

{¶ 97} Like the majority, I would affirm appellant's convictions and death sentence. I respectfully disagree, however, with the majority's conclusion that the aggravating circumstance in R.C. 2929.04(A)(3) requires the state to prove beyond a reasonable doubt that the defendant committed the offense for which he sought to avoid apprehension.

I

{¶ 98} The (A)(3) specification requires the state to prove, beyond a reasonable doubt, that the capital offense was committed for a particular *purpose*— "*for the purpose of* escaping detection, apprehension, trial, or punishment for another offense committed by the offender." (Emphasis added.) R.C.

2929.04(A)(3). The (A)(3) specification enhances the potential penalty for aggravated murder based on the offender's *mens rea*—the offender's purpose—not the *actus reus* of a collateral offense. Cf. *Apprendi v. New Jersey* (2000), 530 U.S. 466, ___, 120 S.Ct. 2348, 2364, 147 L.Ed.2d 435, 457 (finding that, under a New Jersey hate crime statute, "it is precisely a particular criminal *mens rea* that the * * * enhancement statute seeks to target").

{¶ 99} A comparison between the (A)(3) specification and our state's kidnapping statute illustrates the distinction between a core *mens rea* requirement (an *element*) and a collateral offense. The kidnapping statute provides:

"No person * * * shall remove another from the place where the other person is found * * * for any of the following *purposes*:

" * * *

"(4) To engage in sexual activity * * * with the victim against the victim's will." (Emphasis added.) R.C. 2905.01(A)(4).

{¶ 100} Like the (A)(3) specification, the kidnapping statute requires the state to prove, beyond a reasonable doubt, that the offender acted with a specific *purpose*. In *State v. Powell* (1990), 49 Ohio St.3d 255, 552 N.E.2d 191 (superseded by constitutional amendment on other grounds as noted in *State v. Smith* [1997], 80 Ohio St.3d 89, 103, 684 N.E.2d 668, 684), the appellant claimed that his conviction for kidnapping under this section was improper because there was insufficient evidence to prove that sexual activity actually occurred. This court unanimously rejected Powell's contention, deciding that the kidnapping statute "requires only that the restraint or removal occur *for the purpose of non-consensual sexual activity—not that sexual activity actually take place*." (Emphasis added.) *Id.*, 49 Ohio St.3d at 262, 552 N.E.2d at 199. The same logic should apply to this court's analysis of the (A)(3) specification.

**{¶ 101}** The (A)(3) specification has appeared in over forty cases decided by this court since 1976.[4] Like the majority, Jones cites none of them in his brief as support for his contention that commission of the collateral offense must be proved beyond a reasonable doubt. Both the majority and Jones simply cite the general rules from *Winship* and *Jackson* that the state has the burden to prove *all the elements* of any charge beyond a reasonable doubt. See *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Because I do not agree with the majority that the modifying phrase "committed by the offender" constitutes an *element* of the (A)(3) specification, I do not find the constitutional rules of *Winship* and *Jackson* offended by Jones's conviction of the specification absent proof that he committed the underlying offense.

**{¶ 102}** In the present case, the state introduced evidence that Jones had outstanding felony warrants. The state also showed that a week before the killing, Jones told his cousin that he was "facing a lot of time for robbing Isaac Coleman," and that he "was going to shoot at the police if they ever tried to arrest him." This is exactly what occurred. When Officer Glover told Jones, "[Y]ou know why I'm here, * * * I'm just doing my job," Jones fled, eventually shooting and then viciously kicking Officer Glover. The state proved beyond a reasonable doubt that Jones fled and killed Officer Glover *to escape apprehension for another offense*. It was unnecessary for the state to prove beyond a reasonable doubt that Jones actually committed the other offense, and it is therefore unnecessary for this court to decide, as the majority does, that the state met this burden of proof by introducing the single "admission" Jones made to his cousin.[5] As one annotation has put it, "[p]roof that

---

4. See, *e.g.*, *State v. Filiaggi* (1999), 86 Ohio St.3d 230, 714 N.E.2d 867; *State v. Chinn* (1999), 85 Ohio St.3d 548, 709 N.E.2d 1166; *State v. Lawson* (1992), 64 Ohio St.3d 336, 595 N.E.2d 902; *State v. Hancock* (1976), 48 Ohio St.2d 147, 2 O.O.3d 333, 358 N.E.2d 273.

a law enforcement officer was killed in the course of an investigation or arrest has been uniformly held sufficient to establish that the murder was committed for the purpose of avoiding or preventing a lawful arrest." Annotation (1988), 64 A.L.R.4th 755, 763.

## II

{¶ 103} I would also resolve Jones's tenth proposition of law somewhat differently from the majority. In his tenth proposition, Jones contends that the trial court erred when it failed to merge the R.C. 2929.04(A)(3) and (A)(6) death penalty specifications. Death specifications are duplicative and should be merged when they arise from the same act or indivisible course of conduct. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph five of the syllabus. Merger is not required when the specifications are not duplicative or arise from divisible courses of conduct. See *State v. Robb* (2000), 88 Ohio St.3d 59, 85, 723 N.E.2d 1019, 1047 (declining to merge [A][4], [A][5], and [A][7] specifications). A trial court's failure to merge duplicative aggravating circumstances does not always result in reversible error. *State v. Garner* (1995),

---

5. The majority decides that the state proved beyond a reasonable doubt that Jones actually committed the prior offense of aggravated robbery. The majority states that Jones's "admission" to his cousin that he was "facing a lot of time for robbing Isaac Coleman" was all the evidence that the state needed to introduce in order to prove beyond a reasonable doubt that Jones actually committed the aggravated robbery. Under the majority's analysis, if the state charges someone with *aggravated robbery*, the state may discharge its burden of proof in the case solely by introducing the testimony of a witness (not necessarily an eyewitness), who merely testifies that the accused said that he was "facing a lot of time" for *robbery*—an offense that differs significantly from *aggravated robbery*. Compare R.C. 2911.01 and R.C. 2911.02. Though I deem it unnecessary to resolve this issue in the first place, see *supra,* I feel compelled to disagree with the majority's conclusion that Jones's statement to his cousin sufficed, in and of itself, to prove beyond a reasonable doubt that Jones committed aggravated robbery. In this state, to convict someone of aggravated robbery, the state must prove, *inter alia,* either (1) that the offender had a deadly weapon or dangerous ordnance on or about his person, R.C. 2911.01(A)(1) and (2), or (2) that the offender inflicted or attempted to inflict serious physical harm. R.C. 2911.01(A)(3). Jones's "admission" to his cousin did not contain any information tending to prove these elements of aggravated robbery. Accordingly, even if I agreed with the majority's threshold determination that the defendant's commission of the prior offense constitutes an essential element of the (A)(3) specification, which I do not, I could not join its analysis of the sufficiency of the evidence.

74 Ohio St.3d 49, 53-55, 656 N.E.2d 623, 630-631, citing *Jenkins,* at paragraph five of the syllabus. Rather, the reviewing court must determine "whether the jury's penalty-phase consideration of those duplicative aggravating circumstances affected its verdict, and [must] independently determine whether the merged aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt." *Id.* at 53, 656 N.E.2d at 630.

{¶ 104} Here, Jones was convicted of three capital specifications—one (A)(3) specification and two (A)(6) specifications. The trial court *did* merge the two (A)(6) specifications, and thus presented one (A)(3) specification and one (A)(6) specification to the jury in the penalty phase. The majority decides that merger of the (A)(3) and (A)(6) specifications was not required, but I find it unnecessary to resolve this issue here. Assuming, *arguendo*, that specifications (A)(3) and (A)(6) arose from an indivisible course of conduct, and that the trial court should have merged them, I would nevertheless conclude that the failure to do so "did not influence the jury to recommend death [where] it would otherwise have recommended life." *Garner,* 74 Ohio St.3d at 54, 656 N.E.2d at 631. As in *Garner*, merger of the specifications "would not have significantly changed the nature of the evidence the jury was statutorily required to consider in making its recommendation as to a possible sentence of death." *Id.* Accordingly, I would overrule appellant's tenth proposition of law without deciding the merger question.

III

{¶ 105} Assessing appellant's thirteenth proposition of law, the majority concludes that because the state proved each element of the (A)(3) specification beyond a reasonable doubt, "there was no basis for moving to dismiss this specification." I agree that Jones's claim of ineffective assistance of counsel must fail, but not because I share the majority's view that the state proved each element of the (A)(3) specification beyond a reasonable doubt. See fn. 5, *supra*. Because the trial court was not required to dismiss the (A)(3) specification, counsel's failure

to request dismissal cannot be the basis for a claim of ineffective assistance of counsel.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing concurring opinion.

————————————

APPENDIX

{¶ 106} "Proposition of Law No. I: A capital defendant's right to a reliable death sentence under the Eighth Amendment as well as his right to a fair and impartial jury under the Due Process and Equal Protection Clauses of the Fourteenth Amendment are violated when the defendant is prohibited, or unduly restricted from asking questions during voir dire about the prospective jurors' ability to consider mitigating factors. U.S. Const. Amends. VIII and XIV.

{¶ 107} "Proposition of Law No. II: The death sentence must be vacated where mitigating factors are not outweighed by the aggravating circumstances.

{¶ 108} "Proposition of Law No. III: Retrial is required where errors that occurred during voir dire denied a capital appellant a fair and impartial jury. U.S. Const. Amends. VI, VIII and XIV.

{¶ 109} "Proposition of Law No. IV: Denial of a change of venue based upon racial imbalance of the jury deprived the appellant of a fair trial. U.S. Const. Amends. VI and XIV.

{¶ 110} "Proposition of Law No. V: When a trial court denies a capital defendant his counsel of choice, the trial court deprives that defendant of his rights to counsel and to due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and §§ 10 and 16, Article I of the Ohio Constitution.

{¶ 111} "Proposition of Law No. VI: The admission of irrelevant evidence about the extraordinary efforts made to save the victim's life denied appellant due

process and constituted plain error at both phases of this capital trial. U.S. Const. Amends. VIII and XIV.

**{¶ 112}** "Proposition of Law No. VII: Where multiple evidentiary errors in the trial phase prejudice the defendant, the conviction must be reversed. U.S. Const. Amend. XIV.

**{¶ 113}** "Proposition of Law No. VIII: The state must present evidence of a deliberate plan to kill in order to sustain a conviction for a killing with prior calculation and design under Ohio Rev.Code Ann. § 2903.01(A). The state must also present evidence on all essential elements of the charged specifications. U.S. Const. Amends. VI, VIII and XIV.

**{¶ 114}** "Proposition of Law No. IX: A defendant's conviction must be reversed when multiple errors in the trial phase instructions denied him a fair trial and due process of law. U.S. Const. Amend. XIV.

**{¶ 115}** "Proposition of Law No. X: Where it is alleged that a defendant killed a police officer to prevent the defendant's arrest for another offense, the § 2929.04(A)(3) and (A)(6) aggravating circumstances are duplicative and must be merged because they arise from the same act or indivisible course of conduct. U.S. Const. Amends. VIII and XIV.

**{¶ 116}** "Proposition of Law No. XI: Misconduct by the prosecutor at Odraye Jones's capital trial denied him due process of law and undermines confidence in the trial and the sentencing verdict. U.S. Const. [Amends.] VIII and XIV.

**{¶ 117}** "Proposition of Law No. XII: Where penalty phase instructions allow the jury to decide what evidence is admissible concerning the aggravating circumstances and where the instructions do not conform to Ohio and federal law, reversal is required. U.S. Const. Amend[s]. VIII and XIV.

{¶ 118} "Proposition of Law No. XIII: Counsel's performance will be deemed ineffective if it falls below an objective standard of reasonable representation and prejudice arises therefrom. U.S. Const. Amends. VI and XIV.

{¶ 119} "Proposition of Law No. XIV: Resentencing is required where the trial court fails to accord weight to (B)(7) mitigating evidence because it does not qualify as (B)(3) and the court weighs the (A)(6) as a super aggravating circumstance. U.S. Const. Amends. VIII and XIV.

{¶ 120} "Proposition of Law No. XV: Ohio's death penalty law is unconstitutional. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and §§ 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Rev.Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05 (Anderson 1996), do not meet the prescribed constitutional requirements and are unconstitutional on their face and as applied to Odraye Jones."

————————

*Thomas L. Sartini*, Ashtabula County Prosecuting Attorney, and *Ariana E. Tarighati*, Chief Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, State Public Defender, and *Stephen A. Ferrell*, Assistant Public Defender; and *Robert A. Dixon*, for appellant.

————————