OPINION
Layrue Mitchell was found guilty of two counts of felonious assault by a jury in the Montgomery County Court of Common Pleas. He was sentenced to five years of imprisonment on each offense, with the sentences to be served consecutively. Mitchell appeals from his convictions, raising two assignments of error. The facts of the case will be discussed under the first assignment of error.
 I. THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mitchell claims that his convictions were against the manifest weight of the evidence because the injuries about which the victims testified were inconsistent with the use of "a twenty-two pound weight lifter's bar in an axe like manner," as described by the victims, and because of alleged factual discrepancies in the testimony of the state's witnesses.
The state presented the testimony of Gary and Mary Massey, the husband and wife who were the victims of the attacks. Mary Massey testified that she and her husband had left their house at 26 North Findlay in Dayton separately on the night of July 16, 2000 because they had needed to talk and their house had been full of relatives and friends. Gary left on foot, and Mary took their truck and went to a nearby Family Dollar parking lot. Gary met her at the parking lot and got inside the truck, and the couple began to talk while parked in the lot. Shortly thereafter, a pickup truck traveling northbound on Findlay pulled up in front of the Masseys' truck, and one of the occupants yelled, "[W]hat are you queers doing, sucking dick?" Mary believed that the men in the truck had mistaken her for a man, apparently because of her hairstyle. The truck and its three occupants then proceeded along Findlay and briefly disappeared from view.
The Masseys tried to make their way back to their house, but while they were still in the parking lot, the truck reappeared along with another truck. The occupants of the first truck, including Mitchell, got out and began to beat on the Masseys' truck with a barbell, shovel, and stick. Gary was outside the vehicle at that point. When they got close to the Masseys' truck, one of the men realized that Mary was a woman, but when he announced this to the others, Mitchell said "[F]uck it. It's on." Gary tried to pull Mary across Findlay and down the street toward their house, but Mary was having difficulty walking because of her physical condition. Mitchell chased the Masseys with a weight bar, and his friends followed. According to Mary, Mitchell hit Gary with the weight bar at least twice, swinging it like an ax, and the first blow hit Gary on the top of the head and ear, knocking him backward. Mary was hit at least once on the arm. Some of the men then fled in the truck, and Mitchell fled on foot. Mary testified that her arm had been severely bruised in the attack.
Gary Massey corroborated Mary's version of the attack. He further testified that he had suffered a seizure shortly after the attack and that he had lost a significant amount of the hearing in his left ear as a result of being hit with the weight bar. He stated that his recollection of the night's events after he was hit on the head was "fuzzy."
A neighbor and the Masseys' adult daughter, each of whom witnessed part of the attack, provided further corroboration of the Masseys' version of events at trial. The defense did not call any witnesses.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
The jury did not clearly lose its way and create a manifest miscarriage of justice when it convicted Mitchell of the offenses for which he had been indicted. Mitchell points to minor discrepancies in the witnesses' testimony, such as the reason the Masseys had originally left their home and the number of blows struck by Mitchell, as evidence that his conviction was against the manifest weight of the evidence. These discrepancies, however, were not central to the issues before the jury. The evidence bearing on Mitchell's identity as the perpetrator of the attack, his intent to cause harm, and the nature of the Masseys' injuries was uncontroverted. As such, the verdict was not against the manifest weight of the evidence.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN ALLOWING IN PREJUDICIAL AND IRRELEVANT EVIDENCE.
Mitchell objects to the fact that Mary Massey commented that he had not been sober at the time of the attack. He claims that he was unfairly prejudiced by the admission of this "confusing and misleading information."
Mitchell's objection is based on the following exchange during Mary's cross-examination, which related to the three men in the first pickup and their apparent misperception that Mary had been a man:
 DEFENSE COUNSEL: *** Would they have been able to get a look at how you or your husband were [sic] dressed?
MARY: If they'd been sober, probably.
The state then objected on the ground that the question called for speculation. Mitchell did not object to this answer based on its relevance or prejudicial effect.
It is well settled that a defendant waives all but plain error if he fails to object to the admission of irrelevant or prejudicial evidence at trial. State v. Jones (2001), 91 Ohio St.3d 335, 343, citing State v.Joseph (1995), 73 Ohio St.3d 450, 455. "Plain error does not exist unless, but for the error, the outcome of the trial would have been different." Id.
Mitchell's brief suggests that the prosecutor's objection related to the issue he raises herein and that the objection should have been sustained. It is apparent from the transcript, however, that the prosecutor's objection did not relate in any way to the relevance or prejudicial nature of the comment on Mitchell's sobriety. Mitchell may not bootstrap his argument onto the prosecutor's unrelated objection. Rather, Mitchell waived the alleged error with respect to Mary's testimony by failing to object to it. We note that Mitchell also failed to object to a similar comment during Gary's testimony in which Gary described Mitchell's demeanor as having "had rage in his eyes and *** [having looked] like he was on something or had been drinking." Because Mitchell failed to object, this testimony is grounds for reversal only if it clearly affected the outcome of the trial. The testimony against Mitchell was substantial and credible. Because we are very confident that Mitchell would have been convicted notwithstanding the references to his possible intoxication, we find no plain error.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.