I respectfully dissent from the majority opinion. I would sustain appellant's first assignment of error.
The majority has correctly stated the standard of review for an appellate court's review of the denial of a motion for a continuance. I find the trial court abused its discretion in denying the continuance based solely on a faulty legal premise.
At the opening of trial, the following exchange took place on record:
 THE COURT: Mr. Fentress, do you have something to tell the Court?
DEFENDANT FENTRESS: Yes, I need time to get an attorney.
THE COURT: Pardon?
DEFENDANT FENTRESS: I need time to get an attorney.
THE COURT: Why is that, sir?
 DEFENDANT FENTRESS: Because Mr. Pitinii is not representing me.
 THE COURT: This is ready to go to trial, Mr. Fentress. There will be no continuance at all. Mr. Pitinii is your lawyer.
 DEFENDANT FENTRESS: I fired Mr. Pitinii last night. I don't feel that he represented me right.
THE COURT: Do you have another lawyer?
DEFENDANT FENTRESS: I am getting one now.
THE COURT: Who is he?
DEFENDANT FENTRESS: My people is trying to get one.
THE COURT: Pardon me?
DEFENDANT FENTRESS: I am trying to get one.
 THE COURT: No; if you don't have another one here this morning, we are going forward. This will not be continued. All right, sir?
DEFENDANT FENTRESS: No, it is not all right.
 THE COURT: We are going to go forward, I tell you that right now.
 DEFENDANT FENTRESS: For the record, I do not want Mr. Pitinii for my attorney.
 THE COURT: Mr. Fentress, this case has been pending here since, when, sometime now.
 I believe Judge Reinbold had some conversation with you, this case was set for trial. I believe you were informed this was set for trial at nine a.m. Is that correct, sir?
DEFENDANT FENTRESS: Yes.
THE COURT: Then we are going to go forward now.
 DEFENDANT FENTRESS: Like I said, for the record I don't want Mr. Pitinii for my attorney.
 MR. MARAGAS: If I could respond to that. If Mr. Fentress does not want Mr. Pitinii to represent him, what I would suggest to the Court is that Mr. Pitinii sit second chair and that Mr. Fentress represent himself, that he has a constitutional right to do so if he chooses.
 Mr. Pitinii I'm sure would sit second chair willing to help him at any time should he decide that he wants an attorney at any time during the proceeding.
 THE COURT: I will permit Mr. Fentress [sic] to help conduct the trial. If he wants to ask questions, he can do so. Do you understand?
 DEFENDANT FENTRESS: For the record, I am not equipped to represent myself and Mr. Pitinii is no longer my attorney. I do not want him helping me at all.
MR. PITINII: Do you not even want me in the courtroom?
DEFENDANT FENTRESS: No, I don't want his help at all.
THE COURT: Pardon?
 DEFENDANT FENTRESS: I do not want his help at all, and I am not equipped to represent myself.
 THE COURT: Well, Mr. Fentress, you just don't come into Court the morning of the trial and tell the Court that you want another lawyer, that you are not going to go forward. If you wanted to get another lawyer, you have had, what, this happened back in December, I believe it was.
MR. MARAGAS: Christmas Day.
THE COURT: Almost five months now.
 DEFENDANT FENTRESS: This just happened last night. I just discarded Mr. Pitinii last night.
 THE COURT: How long has he been representing you, Mr. Fentress?
DEFENDANT FENTRESS: I would say from December 27.
THE COURT: All right. You hired him, right?
DEFENDANT FENTRESS: Yes.
THE COURT: He is not Court appointed?
DEFENDANT FENTRESS: No, he is not.
 THE COURT: And you selected Mr. Pitinii of your own free will, right, sir?
DEFENDANT FENTRESS: Yes.
THE COURT: The Court did not select Mr. Pitinii?
DEFENDANT FENTRESS: Right.
 THE COURT: You wait until the night before trial before you fired him?
 DEFENDANT FENTRESS: He said things that I know he is not for me.
THE COURT: What do you mean he is not for you, Sir?
 DEFENDANT FENTRESS: He is going to defend me guilty. He is going to say something like that to me? You are not supposed to say something like that.
 THE COURT: He is a well qualified lawyer, and he will do his utmost to present the facts given to him, Sir. That will be guaranteed by this Court.
DEFENDANT FENTRESS: Represent me guilty?
THE COURT: No, he is not going to represent you guilty.
DEFENDANT FENTRESS: That's what he said.
MR. PITINII: May I respond?
THE COURT: Yes, Sir, Mr. Pitinii.
 MR. PITINII: Yes, Sir. Might as well say it now, the cat is out of the bag. I discussed with him last night — just for the record, Mr. Fentress and I had gone through a turbulent relationship, attorney-client relationship, up and down.
 At one point I asked to withdraw because we weren't speaking. He and I began speaking and tried to work things out.
 Mr. Fentress, I don't want to speak for him, I believe he believes that he has already been tried on this. He has pled and that it's double jeopardy to try him again.
 Last night I informed him about that. I asked him if it was okay if — I planned on arguing at trial that if he were guilty of anything, it would be a misdemeanor fleeing and alluding, not a Felony 3 fleeing and alluding.
 My theory was to give the jury something else to attach to as opposed to a Felony 3.
 He got visibly upset and that is still upsetting today and fired me and said I don't want you to show up, I don't want you in the courtroom, I don't want you sitting anywhere near me; and he walked away, and I got up from the jail and I left last night.
 THE COURT: Thank you, Mr. Pitinii. Do you have anything further you want to tell the Court, Mr. Fentress?
DEFENDANT FENTRESS: No.
THE COURT: Okay. Is Judge Reinbold in?
MR. PITINII: Yes.
THE COURT: Take about a ten minute recess.
 THE COURT: Mr. Pitinii, I believe you had some conversation with your client.
 MR. PITINII: Your Honor, I had gone downstairs to ask Mr. Fentress if he would be willing to sign a time waiver to waive his speedy trial time in order to obtain new counsel.
 He informed me that he would not, that I believe he is going to represent himself. He is prepared to go to trial right now.
DEFENDANT FENTRESS: No, I am not, Your Honor.
 MR. PITINII: Okay, please, I would ask that you inquire of the Defendant.
THE COURT: What's that?
 MR. PITINII: I would ask that you inquire of the Defendant.
 THE COURT: Yeah, I will. Mr. Fentress, did Mr. Pitinii explain to you about signing the time waiver?
DEFENDANT FENTRESS: Yes, sir.
 THE COURT: Do you understand the reason why you have to sign a time waiver is because this case has to be brought to trial in a certain length of time.
 If you sign a time waiver, you could hire another lawyer if you wanted to.
 DEFENDANT FENTRESS: I am not understand; but you might later on.
 DEFENDANT FENTRESS: I am not going to represent myself because I can't. For the record, I can't represent myself; but I am not going to try.
 THE COURT: You are not going to try to represent yourself?
DEFENDANT FENTRESS: No, I am not, Your Honor.
THE COURT: Well, you won't sign a time waiver?
DEFENDANT FENTRESS: No, I won't.
THE COURT: You understand if you sign a time waiver —
DEFENDANT FENTRESS: Your Honor, —
 THE COURT: This has to be tried today or a time waiver signed. If you sign a time waiver, I will be able to continue the matter and you can hire a new lawyer.
 DEFENDANT FENTRESS: Your Honor, I am not going to sign a time waiver.
THE COURT: Then we are going to forward.
 MR. PITINII: Now I am confused. We are going forward. Am I sitting second chair?
 THE COURT: Yep. You can be in the courtroom anyhow. You can sit wherever you want to sit. Move the chair if you want to.
MR. PITINII: Do you want me to sit back there?
 DEFENDANT FENTRESS: I want him to get out. I want him to leave.
 THE COURT: He is an Officer of the Court. He is going to stay in the courtroom.
 MR. PITINII: I will just sit in the back of the courtroom then.
THE COURT: All right.[1]
I find this excerpt demonstrates the trial court's only reason for denying appellant's motion for a continuance was appellant's decision not to sign a time waiver.
In State v. Unger[2], the Supreme Court of Ohio pronounced an objective test which "balances the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against any potential prejudice to the defendant * * *" to determine whether a motion for continuance should be granted.[3] The factors a court should consider include:
 * * * the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
The record demonstrates the trial court's decision was based solely on appellant's refusal to sign a speedy trial waiver. Not only was this not one of the factors set forth by the Supreme Court in Unger, supra, I would find it put appellant in an untenable position. In essence, the trial court told appellant he had one of two choices: sign a waiver of his right to a speedy trial, or proceed without an attorney. Appellant was presented with a Hobson's choice. Either waive his right to a speedy trial or waive his right to counsel. It is clear the instruction was erroneous. A defendant's motion to continue on the day of trial would have tolled the speedy trial time rendering a speedy trial waiver unnecessary. Because the trial court's option to waive his speedy trial rights was unnecessary, it resulted in prejudice to appellant by forcing him to go to trial without the benefit of counsel.
I agree the record contains evidence upon which the trial court could have based a valid decision to deny appellant's continuance. Appellant's original trial counsel noted he was fired because of a disagreement over trial strategy. Like the majority, I would find such a reason illegitimate for the purposes of a motion to continue. I would also agree this reason would, arguably, demonstrate appellant contributed to the circumstance giving rise to the requested continuance. However, as set forth above, the trial court's decision was not based upon this reason. Instead, it was based solely upon appellant's refusal to sign a time waiver.[4]
While overlooking the reason stated on the record, the majority concludes the other evidence, namely appellant's illegitimate and potentially contrived decision to fire his attorney on the day of trial without good cause, was sufficient to demonstrate the trial court did not abuse its discretion in overruling appellant's motion to continue. The majority cites a number of cases regarding the grant of a motion for substitution of counsel close to trial.[5] I find cases analyzing a trial court's decision to grant or deny a motion for new counsel on the day of trial are not germane to an analysis of whether the trial court abused its discretion in denying a motion for a continuance after the appellant's privately retained counsel was no longer authorized to represent him. Had appellant requested the appointment or substitution of counsel on the day of trial, these cases would be relevant. However, the test for the motion at issue is set forth in Unger, supra.
Because I find the trial court's decision was wholly unsupported by any of the factors contained in Unger, supra, and because the decision was also based on an incorrect legal premise, I would find the trial court abused its discretion in denying appellant's motion for a continuance.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the court of Common Pleas, Stark County, Ohio, is affirmed. This matter is remanded to the trial court for execution of sentence. Costs assessed to appellant.
[1] Tr. at 5-16.
[2] State v. Unger (1983), 5 Ohio St.3d 217.
[3] In re Kriest (Aug. 6, 1999), Trumbull App. No. 98-T-0093, unreported, 1999 WL 607379, at 3, citing Unger at 67,423 N.E.2d 1078.
[4] We note the record does not indicate appellant requested or received any other continuance, the length of the requested delay, or that the delay would cause an unusual inconvenience to litigants, witnesses, opposing counsel or the court.
[5] State v. Cowans 91999), 87 Ohio St.3d 68; State v. Jones (2001),91 Ohio St.3d 335; State v. Henness 91997), 79 Ohio St.3d 53. These cases involved appointed counsel, not privately retained counsel.