OPINION
John T. Hibbler II appeals from his conviction and sentence in the Clark County Common Pleas Court for felony murder with a firearm specification, attempted aggravated burglary with a firearm specification, and improperly discharging a firearm into a habitation.
Hibbler advances seven assignments of error on appeal. First, he contends that the trial court erred when it denied him a continuance to replace his court-appointed attorney with retained counsel of his choice. Second, he argues that his convictions are against the manifest weight of the evidence. Third, he asserts that his convictions are based on legally insufficient evidence. Fourth, he alleges that he received ineffective assistance of counsel. Fifth, he contends that the trial court erred when it failed to make an on-the-record inquiry into his reasons for wanting to replace his court-appointed attorney with retained counsel of his choice. Sixth, he claims that the trial court violated his right to a speedy trial. Seventh, he argues that the cumulative effect of the foregoing errors deprived him of his right to a fair trial.
The present appeal stems from Hibbler's role in a "turf war" between two groups selling crack cocaine in Springfield, Ohio. The record reflects that Hibbler and his companions sold drugs near 27 East Southern Avenue, a residence where a rival group sold drugs. In the early morning hours of October 20, 2000, Darrick Cade and Tammy Wells were in an upstairs bedroom at 27 East Southern Avenue. Several other individuals, including Wesley Robinson, Betty McMahon, Chris Orr, Rob Wilcox and Lindsey Cade, were downstairs in the residence. Sometime early that morning, the group downstairs heard kicks on the front and side doors. The side door opened, and Lindsey Cade and Wilcox saw Hibbler fall through the doorway. The occupants of 27 East Southern also heard gunshots outside, and someone inside the house returned gunfire as the group downstairs took cover. Darrick Cade, who was still upstairs at the time, grabbed a shotgun and heard someone running up the steps. When the bedroom door opened, Darrick fired the shotgun. He then turned on a light and found that he had shot Wesley Robinson. After Darrick fired the shotgun, the occupants of the house fled the scene. Springfield police officers subsequently conducted an investigation, interviewing Hibbler and others involved in the incident at 27 East Southern. After initially denying any involvement, Hibbler admitted having a gun, kicking the door, fleeing the scene and discarding the gun near South Limestone Street in Springfield.
At trial, the state presented the testimony of several law enforcement officials and residents of the neighborhood where the shooting occurred. The state also presented testimony from Darrick Cade, Tammy Wells, Lindsey Cade, Betty McMahon, Rob Wilcox and Aaron Welliford. Hibbler called one witness, Springfield police sergeant Barry Eggers, who testified as to Darrick Cade's condition approximately one hour after the shooting. The jury found Hibbler guilty of felony murder and attempted aggravated burglary, with firearm specifications, and discharging a firearm into a habitation. On April 19, 2001, the trial court sentenced him to an aggregate prison term of 34 years to life. This timely appeal followed.
In his first assignment of error, Hibbler contends that the trial court erred by denying him a continuance to replace his court-appointed attorney with retained counsel. In a related argument, Hibbler asserts in his fifth assignment of error that the trial court erred by failing to inquire into the reasons behind his request to replace his court-appointed attorney with retained counsel. With respect to these assignments of error, the record reflects that attorney Richard Mayhall presented the trial court with a conditional entry of appearance on Friday, March 30, 2001. His appearance was conditioned upon the trial court continuing Hibbler's trial, which was scheduled to begin on Monday, April 2, 2001.
In support of his request for a continuance, Mayhall made four arguments. First, he informed the trial court that Hibbler's family had not raised sufficient money to retain him until the previous day. Second, he noted that Hibbler had not previously requested a continuance. Third, he stated that Hibbler "has expressed to me some concerns about [Ronald] Morris," the court-appointed public defender. Mayhall added that Hibbler "doesn't want Mr. Morris to represent him," and he advised the court that Hibbler was "prepared to tell the [c]ourt more specifically what those issues are." Fourth, Mayhall explained that Hibbler's father had expressed concerns about his ability to communicate with Morris, who allegedly would not return phone calls.
The state opposed the motion for a continuance, citing (1) a prior continuance to appoint counsel for co-defendants, (2) the difficulty in obtaining service on a large number of witnesses, (3) the considerable amount of time spent in trial preparation, and (4) the necessity of coordinating Hibbler's trial with an upcoming trial of a co-defendant. Finally, public defender Morris informed the court that he was prepared to proceed with trial, but he added that he was willing to step aside if Hibbler wished to retain Mayhall. After hearing the foregoing arguments, the trial court overruled the motion, stating that it did not "see any reason to continue the matter."
It is well settled that a trial court has broad discretion over continuance requests, and its decision to deny a continuance will not be reversed absent an abuse of discretion. State v. Unger (1981),67 Ohio St.2d 65. An abuse of discretion requires a finding that a trial court's decision was unreasonable, arbitrary or unconscionable.
State v. Adams (1980), 62 Ohio St.2d 151, 157. When determining whether a court's discretion to deny a continuance has been abused, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the moving party. In Unger, the Ohio Supreme Court set forth a test that "balances the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against any potential prejudice to the defendant" to determine whether a continuance should be granted. Unger, 67 Ohio St.2d at 67. Relevant factors include: (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) any inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances giving rise to the request for a continuance; and (6) other factors depending on the unique circumstances of each case.
In the present case, some of the foregoing factors do militate in favor of Hibbler's request for a continuance. The record reflects that he had not requested any other continuances. In addition, we cannot say that Hibbler's request for a continuance was for illegitimate purposes or was contrived. On the other hand, the requested continuance likely would have been relatively lengthy given Mayhall's lack of prior involvement in the case.[1] We note too that granting a continuance on the eve of trial undoubtedly would have inconvenienced the trial court and the prosecuting attorney, who had completed his trial preparation and had arranged for the appearance of numerous witnesses. Moreover, Hibbler contributed to the circumstances giving rise to his request for a continuance, insofar as he lacked funds to retain Mayhall until the last business day before trial.
After reviewing the record in light of applicable case law, we conclude that the trial court did not abuse its discretion when it refused to grant a continuance for the first, second, and fourth reasons cited by Mayhall in his argument to the trial court. In reaching this conclusion, we note that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate . . . rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States (1988), 486 U.S. 153,159; State v. Jones, 91 Ohio St.3d 335, 2001-Ohio-57. Thus, "[a] defendant has only a presumptive right to employ his own chosen counsel[,]" and courts must "balanc[e] the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." State v. Keenan, 81 Ohio St.3d 133, 137,1998-Ohio-459. In addition, we note that "the refusal to replace an appointed attorney is not an abuse of discretion when the request is made at the last minute prior to trial and adequate reasons for the request are not set out in the record." State v. Harper (1988), 47 Ohio App.3d 109,113.
Although we do not criticize Hibbler for lacking sufficient funds to retain Mayhall earlier, his poor financial condition did not obligate the trial court to grant his last-minute request to switch attorneys. As noted above, the trial court was required to consider not only Hibbler's right to secure counsel of his choice but also the public's interest in the prompt administration of justice. In striking a proper balance, the trial court did not abuse its discretion in denying Hibbler's motion, which was made only one working day before trial. Although a defendant such as Hibbler generally has the right to retain counsel of his choice, the proper time for doing so was much earlier. In addition, the fact that Hibbler had not requested any other continuances was not dispositive. Rather, as explained above, it was only one factor for the trial court to consider. With respect to Mayhall's contention that the court-appointed public defender had failed to communicate with Hibbler's father, such an argument did not constitute good grounds for continuing the trial to remove the public defender. Hibbler cites no authority, and we are aware of no authority, to support the proposition that the public defender had a duty to communicate with Hibbler's family.[2] Rather, the public defender's duty was to Hibbler, his client. See State v. Magwood (March 26, 1992), Franklin App. No. 91AP-529 (concluding that appointed counsel's alleged failure to communicate with the defendant's family did not constitute good cause for granting a continuance and removing counsel).
Mayhall's remaining argument to the trial court warrants a more detailed analysis. As noted above, he informed the trial court that Hibbler had "expressed to me some concerns about [public defender] Morris." Mayhall stated that Hibbler "doesn't want Mr. Morris to represent him[.]" He also advised the court that Hibbler was "prepared to tell the [c]ourt more specifically what those issues are." On appeal, Hibbler argues that the foregoing remarks obligated the trial court to inquire into his dissatisfaction with the public defender and, if appropriate based on the outcome of its inquiry, to grant a continuance so that Mayhall could represent him.
Upon review, we conclude that Mayhall's remarks did not obligate the trial court to inquire into the reasons behind Hibbler's dissatisfaction with his court-appointed attorney. In State v. Deal (1969),17 Ohio St.2d 17, the Ohio Supreme Court specifically addressed the obligations of a trial court when a defendant questions the adequacy of his assigned counsel. In that case, the defendant attempted to discharge his attorney during trial, informing the court that his assigned counsel had failed to file a notice of alibi or to subpoena witnesses. The trial court rejected the defendant's complaint as "unreasonable," without making any inquiry into its merits. On appeal, the Ohio Supreme Court reversed the defendant's conviction, holding that "[w]here, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." Id. at syllabus. In so ruling, theDeal court recognized that absent an on-the-record inquiry into the defendant's complaints, it was impossible to conduct appellate review of appointed counsel's performance. The court also recognized that "[t]he appellant, by himself, did everything he could be expected to do to preserve his objection as to the incompetency of his counsel and to the defense his counsel had prepared. His objection was specific, not vague or general." Id. at 19.
In the wake of Deal, Ohio's appellate courts have reversed convictions when trial courts fail to make on-the-record inquiries into specific objections about the performance of court-appointed counsel. Notably, however, courts have read Deal as imposing on a defendant the initial burden of articulating specific concerns about his appointed counsel. Absent specific objections to counsel's performance, the trial court has no duty to investigate anything. See, e.g., State v. Carter (1998),128 Ohio App.3d 419 ("The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record. . . . [This] limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further."); State v. Harris (Nov. 27, 1992), Lucas App. No. L-92-039 ("The duty to inquire described in State v. Deal is not a duty to inquire into the grounds of the motion. The accused bears the duty of announcing the grounds of the motion."); State v. Simons (Nov. 22, 2000), Champaign App. No. 99CA5 (reasoning that "the mere claim of a `conflict of interest,' without more, is not a sufficiently specific allegation to trigger the duty to investigate further"); State v. Davis
(May 18, 1998), Franklin App. Nos. 97APA08-1020, 97APA08-1021 ("When . . . a defendant fails to raise specific concerns about his appointed counsel with the court during trial, we have held that the requirements of Deal are not implicated."); State v. Smith (Sept. 14, 2000), Cuyahoga App. No. 76998 ("[I]n order to necessitate [a Deal] inquiry, the defendant must announce grounds for appointment of new counsel which are sufficiently specific to trigger the duty of further investigation.");State v. King (1995), 104 Ohio App.3d 434, 438 (acknowledging the Deal
court's requirement that "allegations of ineffective assistance had to be `specific, not vague or general'"); State v. Washington (Aug. 17, 2001), Hamilton App. Nos. C-000754, B-0005453 (reasoning that "the better rule requires the defendant to raise concerns about his appointed counsel with sufficient specificity to warrant further investigation," and noting that "a trial court, without more, does not abuse its discretion in finding that a general allegation of unhappiness with appointed counsel is so vague that it does not require additional investigation").
In the present case, Hibbler allowed Mayhall to argue his request for a continuance to replace the public defender. In his remarks to the court, Mayhall did not identify any specific "issues" that Hibbler had with his court-appointed attorney. Nor did Mayhall allege any specific facts which, if true, would have required the trial court to remove the public defender. Instead, Mayhall stated only that Hibbler was "prepared" to tell the court more specifically what his "issues" were. In light of the foregoing case law, we conclude that Mayhall's comments were insufficient to impose a duty on the trial court to conduct a Deal inquiry. As noted above, "[t]he duty to inquire described in State v. Deal is not a duty to inquire into the grounds of the motion. The accused bears the duty of announcing the grounds of the motion." State v. Harris (Nov. 27, 1992), Lucas App. No. L-92-039. In short, given that Hibbler's retained representative, Mayhall, failed to recite any specific objections to the public defender's performance, the trial court had no obligation underDeal to ask Hibbler anything.[3] Despite the foregoing conclusion, we stress that the better approach would have been for the trial court to have questioned Hibbler upon learning that he had unspecified "issues" with the public defender. For present purposes, we simply hold that Deal
did not obligate the trial court to do so. In order to have compelled aDeal inquiry, Mayhall should have announced the nature of Hibbler's "issues" with specificity.[4]
Finally, we note that Hibbler's court-appointed attorney, Morris, also said nothing that would have obligated the trial court to conduct a Deal
inquiry. In addition to announcing that he was prepared to proceed with trial, Morris stated: "Well, your Honor, obviously if Mr. Hibbler would like to retain Mr. Mayhall, I wouldn't stand in the way. I think for a confidence issue for any Defendant, he probably would be more confident in someone he's going to retain who he wants to be represented by." These remarks by Morris do not indicate any specific concerns that Hibbler may have had about his performance. As a result, the remarks by Morris did not necessitate a Deal inquiry by the trial court.
 In short, neither Mayhall nor Morris voiced any specific objections that Hibbler may have had about his counsel's performance. Consequently, the trial court had no obligation under Deal to inquire into the nature of Hibbler's unspecified "issues" with the public defender. In addition, given that neither Mayhall nor Morris established good cause for removing Morris from the case, the trial court did not abuse its discretion in overruling Hibbler's request for a continuance for that purpose. See, e.g., State v. Harper (1988), 47 Ohio App.3d 109, 113 (reasoning that "the refusal to replace an appointed attorney is not an abuse of discretion when the request is made at the last minute prior to trial and adequate reasons for the request are not set out in the record"). Based on the reasoning and citation of authority set forth above, we overrule Hibbler's first and fifth assignments of error.[5]
In his second assignment of error, Hibbler argues that his convictions are against the manifest weight of the evidence. When evaluating a manifest-weight claim, an appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A verdict should be overturned as against the manifest weight of the evidence only in extraordinary situations when the evidence weighs heavily against conviction. Id.
After reviewing the record in this case, we cannot say that the evidence weighs heavily against Hibbler's conviction on any count. In support of his argument, Hibbler cites trial testimony in an attempt to show that a crack party was taking place at 27 East Southern Avenue and that Darrick Cade was under the influence of crack when he shot and killed Wesley Robinson. Hibbler also suggests that certain occupants of 27 East Southern Avenue disagreed about whether Darrick Cade previously had fired the shotgun that he used to kill Robinson. Hibbler also suggests, with little support, that some of the state's witnesses testified out of self-interest. In addition, he contends that Lindsey Cade made inconsistent statements about whether he (Hibbler) fell through the door and possessed a firearm. Finally, Hibbler suggests that the record contains inconsistent testimony as to whether Robert Wilcox, another occupant of 27 East Southern Avenue, possessed a firearm at the time in question.
The foregoing assertions do not persuade us that Hibbler's convictions are against the manifest weight of the evidence. With respect to his convictions for improper discharge of a firearm into a habitation, attempted aggravated burglary and felony murder, Hibbler suggests that he was not present at the scene of the shooting and that he did not possess or discharge a firearm. According to Hibbler, the evidence presented at trial was unreliable and did not prove his involvement in the crimes for which he was convicted.
Upon review, we conclude that the manifest weight of the evidence does support a finding that Hibbler was present and did possess and improperly discharge a firearm into 27 East Southern Avenue. In his taped confession, Hibbler admitted that he kicked the door of the residence. A forensic expert's examination of a shoe print on the door supports his confession. In addition, at least two eyewitnesses testified that they saw Hibbler kick the door. Furthermore, as the state properly notes in its brief, eyewitness testimony and forensic evidence both indicate that bullets entered the house at 27 East Southern Avenue. Shortly after the shooting, an operable Lorcin 9 mm handgun was found near the scene. In his confession, Hibbler admitted having discarded the handgun on the night of the shooting. Although he denied having fired the handgun, investigators found five shell casings near 27 East Southern Avenue. A forensic expert tested the casings and determined that they were fired from Hibbler's Lorcin handgun. In light of the foregoing facts, the evidence does not weigh strongly against Hibbler's convictions.[6] As a result, we overrule his second assignment of error.
In his third assignment of error, Hibbler asserts that his convictions are based on legally insufficient evidence. The record reflects, however, that he failed to make a Crim.R. 29 motion for judgment of acquittal either after the state rested or after he rested. When a criminal defendant fails to make a Rule 29 motion at trial, he waives his ability to challenge the sufficiency of the evidence on appeal. State v.Roe (1989), 41 Ohio St.3d 18; State v. Knapp (Jan. 26, 2001), Montgomery App. No. 18457. Although an appellate court may conduct a "plain error" review even absent a Rule 29 motion at trial, we find no plain error in the present case. In addition, given our determination above that Hibbler's convictions are supported by the manifest weight of the evidence, they necessarily are based on legally sufficient evidence as well. See, e.g., State v. Rutledge (June 1, 2001), Montgomery App. No. 18462 (reasoning that when a conviction is supported by the manifest weight of the evidence it necessarily is supported by sufficient evidence). Accordingly, Hibbler's third assignment of error is overruled.
In his fourth assignment of error, Hibbler alleges that he was deprived of his constitutional right to the effective assistance of counsel. In particular, he alleges ineffective assistance of counsel based on his attorney's (1) failure to make a Crim.R. 29 motion for judgment of acquittal, (2) failure to pursue an alibi defense or to argue the defense of abandonment, (3) failure to file a motion to suppress his videotaped confession, (4) failure to call a character witness, and (5) failure to challenge the expertise of an expert witness for the state.
Upon review, we find each of the foregoing arguments to be unpersuasive. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, i.e., that it fell below "an objective standard" and (2) that prejudice arose from counsel's performance. State v. Bradley (1989),42 Ohio St.3d 136, 137, at paragraph two of the syllabus. To establish prejudice, a defendant must show a reasonable probability that the trial result would have been different but for counsel's deficient performance. Id. at paragraph three of the syllabus.
In the present case, Hibbler cannot demonstrate ineffective assistance of counsel based on his attorney's failure to make a Crim.R. 29 motion for judgment of acquittal. Even if counsel provided deficient representation by not moving for acquittal, Hibbler cannot show prejudice because, as noted above, the evidence was sufficient to sustain his conviction on each count. Hibbler also cannot establish ineffective assistance of counsel based on his attorney's failure to pursue an alibi defense or to argue abandonment. With respect to the alibi issue, Hibbler cites the trial testimony of Aaron Welliford. On direct examination, Welliford testified that Hibbler had been with him prior to the shooting and then "went to a girl's house." Despite Hibbler's assertions to the contrary, this testimony does little to establish an alibi. Welliford did not specify how long Hibbler allegedly stayed at the girl's house, and he did not testify that Hibbler was with the unidentified female at the time of the shooting. Notably, such an alibi theory would contradict the trial testimony of two eyewitnesses who testified that they saw Hibbler at the scene of the shooting. Perhaps more importantly, such an alibi would contradict Hibbler's admission that he was present at the scene of the shooting, that he kicked the door, and that he carried a handgun. In light of these facts, trial counsel did not provide deficient representation by failing to use Welliford's testimony to advance an alibi defense. Given Hibbler's admission that he was present, that he kicked the door, and that he carried a handgun, trial counsel likewise did not provide deficient representation by failing to pursue an abandonment affirmative defense. According to Hibbler, "the affirmative defense could have been that since [he] did not have a gun that night, then he had abandoned the commission of the crime and should have been found not guilty." This abandonment theory would contradict Hibbler's own admission that he did have a gun on the night of the shooting. In any event, nothing in the record suggests that Hibbler "abandoned his effort to commit [an] offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." State v. Herron (Dec. 13, 1996), Champaign App. No. 95-CA-23. As a result, we discern no basis for trial counsel to have pursued an affirmative defense of abandonment.
Hibbler also cannot demonstrate ineffective assistance of counsel based on his attorney's failure to file a motion to suppress his videotaped confession. Hibbler asserts that such a motion would have been granted because his confession was coerced. Specifically, he argues that a police investigator "threatened" him by stating that "everybody was going to try to put [the murder] on him[.]" In our view, this statement by the police officer was a permissible interview technique rather than a "threat" of the type required to render a confession involuntary. Additionally, we note that the statement by the investigator was literally true. As the trial testimony of the state's witnesses makes clear, several people did indeed try to "put the murder on him."
The Sixth Amendment "does not require defense counsel to file a motion to suppress evidence where none of the defendant's constitutional rights were violated." State v. Lester (1998), 126 Ohio App.3d 1, 6. In the present case, the record contains nothing to suggest that the trial court would have sustained a motion to suppress. Our own review of the record reveals no violation of Hibbler's constitutional rights. Consequently, trial counsel did not provide ineffective assistance by failing to file a motion to suppress.
Hibbler also cannot demonstrate ineffective assistance of counsel based on his attorney's failure to call one or more character witnesses. On appeal, he reasons that "[s]urely there should have been at least some character witnesses put on the stand to show that [he] shouldn't be sent to prison for life." As the state properly notes, however, nothing in the record before us suggests that such character witnesses were available or willing to testify on Hibbler's behalf. Absent evidence in the record indicating that positive character witnesses were willing and able to testify, we cannot say that trial counsel provided deficient representation by failing to call them. Nor can we say that trial counsel's failure to call unidentified character witnesses prejudiced Hibbler in any way.
Finally, Hibbler cannot demonstrate ineffective assistance of counsel based on his attorney's failure to challenge the expertise of an expert witness for the state. In support of this argument, Hibbler contends that his attorney should have objected to a police sergeant's testimony about gun jams and "tumbling" rounds. According to Hibbler, the state failed to establish the sergeant's expertise on these issues. Upon review, we find no ineffective assistance of counsel. The record reflects that the police sergeant had been a member of the Springfield police department for 26 years. In light of this experience, defense counsel reasonably may have believed that the sergeant was qualified to testify about the operation of a firearm, what causes a gun to jam, and what causes a round to "tumble." In any event, Hibbler has failed to show any prejudice as a result of the sergeant's testimony on these minor points. Accordingly, his fourth assignment of error is overruled.
In his sixth assignment of error, Hibbler contends that his speedy trial rights were violated. We note, however, that he did not file a motion alleging a speedy trial violation prior to trial. As a result, he waived his ability to raise the issue on appeal. State v. Wells (Jan. 19, 1994), Greene App. No. 92-CA-122; see also R.C. 2945.73(B). His sixth assignment of error is overruled.
In his seventh assignment of error, Hibbler contends that the cumulative effect of the errors alleged in his other assignments of error deprived him of his constitutional right to a fair trial. Our analysis of Hibbler's first six assignments of error reveals that he has not demonstrated multiple errors. As a result, no "cumulative error" exists, and his final assignment of error is overruled.
Based on the reasoning and citation of authority set forth above, we hereby affirm the judgment of the Clark County Common Pleas Court.
Judgment Affirmed.
WOLFF, P.J., and FAIN, J., concur.
[1] The evidence before us does not reflect that Mayhall requested any particular length of continuance. Cf. State v. Stevens (April 3, 1998), Clark App. No. 16509 (reasoning that a failure to identify the potential delay when requesting a continuance militates against granting the continuance).
[2] The only case cited by Hibbler on this point, State v. Bronaugh
(1982), 3 Ohio App.3d 307, involved a lack of communication between defense counsel and his client, not his client's family.
[3] In opposition to this conclusion, Hibbler cites our opinion in Cityof Dayton v. Pullen (June 9, 2000), Montgomery App. No. 17894. In that case, however, the trial court did inquire into the defendants reasons for wanting to be represented by another attorney. In response to the trial court's inquiry, the defendant identified a specific reason why he wanted new counsel, namely appointed counsel's failure to prepare a defense by not filing motions or obtaining evidence. Despite the defendant's recitation of these specific concerns, the trial court failed to make any inquiry into their validity. As a result, we reversed the defendant's conviction and remanded the cause on the authority of Deal. Unlike Pullen, the trial court in the present case did not inquire into the specifics of Hibbler's unidentified "issues" with the public defender, and based on the case law set forth above, we conclude that it had no obligation under Deal to do so. In addition, neither Mayhall nor Morris ever identified the specific nature of Hibbler's "issues." Consequently, the trial court did not violate Deal by failing to make any inquiry into the merits of those unspecified issues.
[4] Alternatively, if the specifics of Hibbler's "issues" were unknown to Mayhall, then the public defender, Morris, should have identified them for the court.
[5] Although the trial court had no obligation to conduct a Deal
inquiry, we note that Hibbler was not necessarily without recourse. If the "issues" between Hibbler and Morris were sufficiently serious to warrant the public defender's removal from the case, then Hibbler might have been capable of identifying those issues in a petition for post-conviction relief and arguing ineffective assistance of counsel.
[6] In his manifest-weight argument, Hibbler addresses his multiple convictions together. As noted above, he suggests only that the state presented unreliable testimony and that he was not present and did not possess or shoot a firearm into 27 East Southern Avenue. Given that Hibbler has raised the same arguments with respect to each of his convictions, we need not conduct a separate manifest-weight analysis for each one. With respect to his murder conviction, however, we pause briefly to note that his conviction is not against the manifest weight of the evidence even though Darrick Cade, an occupant of 27 East Southern Avenue, fired the shotgun blast that killed Wesley Robinson. Although Hibbler does not raise this issue, the state correctly notes in its brief that he may be convicted of murder even though an intended victim, Darrick Cade, shot and killed Wesley Robinson. The critical inquiry is whether Hibbler's actions in committing an underlying felony offense were the proximate cause of Robinson's death. Cf. State v. Dixon (Feb. 8, 2002), Montgomery App. No. 18582, 2002-Ohio-541. In the present case, the manifest weight of the evidence satisfies our proximate-cause inquiry. The evidence suggests that the death of Wesley Robinson would not have occurred but for the actions of Hibbler in committing attempted aggravated burglary and improperly discharging a firearm into a habitation. In addition, Robinson's death was foreseeable given that Hibbler fired a gun into a house occupied by individuals involved in selling drugs.