JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Terry Anderson, appeals his convictions in the Court of Common Pleas, Criminal Division, following a bench trial. He claims the evidence presented at trial was against the manifest weight and his trial counsel was ineffective for failing to file a motion to suppress a photo array shown to the victim. After reviewing the record and for the reasons set forth below, we affirm the appellant's convictions.
 {¶ 2} On April 16, 2003, the Cuyahoga County Grand Jury returned two separate indictments against Terry Anderson and Thomas Hall, charging each man with two counts of aggravated burglary, in violation of R.C. 2911.11; two counts of felonious assault, in violation of R.C. 2903.11; three counts of kidnaping, in violation of R.C. 2905.01; two counts of aggravated robbery, in violation of R.C. 2911.01; two counts of having a weapon under a disability, in violation of R.C. 2923.13; and attempted murder, in violation of R.C. 2923.02. All counts included one- and three-year firearm specifications. On April 23, 2003, Anderson and Hall pleaded not guilty to the entire indictment.
 {¶ 3} On July 17, 2003, Anderson and Hall waived their rights to a trial by jury, and a joint trial before the bench began. The following information was presented at trial.
 {¶ 4} In the early morning hours of April 15, 2001, Hall and an accomplice, wearing a ski mask with large eye and mouth openings, broke into the home of the victim, Gale Pratt. Asleep inside the home were Pratt and her three children; her friend, Tenna Sheldon and her son; and Pratt's nephew, Demetrius Williams.
 {¶ 5} The intruders went to the bedroom of five-year-old Demetrius Williams and took him to the door of Pratt's bedroom at gun point. Only Hall had a firearm at this time. He kicked in the bedroom door and saw Pratt reaching under her mattress for something. He instructed her to get off the bed and lifted the mattress to find a nine-millimeter, semi-automatic Ruger handgun; he checked the weapon to make sure it was loaded. Everyone in the house was awakened and put into Pratt's bedroom. Hall then demanded money from Pratt, who gave him eighty dollars. He told her that "they had been through this before" and referred to Pratt as "Little Bit," a prior nickname. Hall was suspected of having robbed Pratt in her home on November 29, 2000.
 {¶ 6} Pratt testified that, while the men searched through her bedroom, they kept referring to each other as "T." Hall repeatedly demanded more money from Pratt and took her from the bedroom downstairs to the kitchen. The accomplish was told to watch the children and Sheldon in Pratt's bedroom. He asked Hall for one of the two guns, and Hall gave him his gun and kept Pratt's Ruger.
 {¶ 7} In the kitchen, Hall tried to ignite the stove to burn Pratt's hands to frighten her into giving him more money. When the stove would not ignite, he broke a broom stick and told Pratt that he was going to rape Sheldon. Hall took Pratt back to her bedroom.
 {¶ 8} Because Pratt feared that Hall would hurt her family to get money that she did not have, she threw a clock radio through her bedroom window and started crying out for help. When she turned from the window to look back into the bedroom, Hall shot her in the chest with the Ruger. Pratt jumped out of the window and was shot two more times in the arm and leg. She stated that when Hall started firing, the accomplice seemed shocked and ran out of the bedroom. Pratt fell from the second story window into the bushes below and ran to a friend's house for help. Hall and the accomplice fled the scene before the police arrived.
 {¶ 9} The first bullet caused Pratt's lung to collapse; it also nicked her heart, and she was hospitalized for ten days.
 {¶ 10} Detective Riedenthaler spoke with Shawnte Carson, Pratt's sister, and Charmaine Fleetwood, Hall's ex-girlfriend, and he identified Hall and a man named "Terry" as the possible suspects.
 {¶ 11} Hall was arrested on May 10, 2001 on an unrelated matter with a Ruger in his possession. Although the serial numbers on the Ruger were filed off, some of them were recovered and matched the serial numbers of Pratt's weapon, and a ballistic test identified it to be the same weapon that had been used to shoot Pratt. Hall claimed he had traded a "crack head" some crack in exchange for the gun. His description of the "crack head" closely matched the description of Anderson.
 {¶ 12} Pratt described the perpetrators to Detective Riedenthaler. She described Hall as the "shorter guy" and the accomplice as the "taller guy." She stated that the shorter guy was a young black male with a light mustache, well built, with light smooth skin, and the taller guy was an older black male with dark skin, slim, with bad skin around the eyes, i.e., acne. She stated that the accomplice wore a black sweatshirt and had on gray baggy jeans with the word "boss" written across the leg.
 {¶ 13} Pratt stated she had observed the two men for at least 20 to 30 minutes in well lighted rooms and was as close as one foot from Hall and four feet from the accomplice during most of the ordeal. she also claimed that, despite the ski masks, she could make out their facial features because of the unusually large openings around the eye and mouth areas and that she got a better look at the accomplice because "she could see most of his face." She also believed that she could identify the accomplice if she saw him again.
 {¶ 14} In February 2002, Detective Riedenthaler showed Pratt a photo array of eight possible suspects, and she identified Anderson as Hall's accomplice during the April 15, 2001 incident. Because she was not one hundred percent sure if Anderson was the perpetrator, and she requested another side profile photograph of him, Pratt did not identify Hall, whose photo was in the same array. At trial, however, Pratt was absolutely sure that both Anderson and Hall were the men who broke into her house on April 15.
 {¶ 15} When Detective Riedenthaler interviewed Anderson, he admitted he knew Hall, but denied any involvement in the Pratt robbery and shooting.
 {¶ 16} At trial, Demetrius Williams testified that Hall and Anderson matched his recollection of the intruders' appearances although he had not previously provided a description of the intruders or a statement to the police. He testified that Hall's and Anderson's builds and skin complexions matched those of the perpetrators he saw on April 15.
 {¶ 17} Charmaine Fleetwood testified that Hall, her ex-boyfriend, bragged about robbing and shooting a woman on the west side, and the woman had jumped out of a window. She also stated that Hall goes by the nickname of "T," and she denied that she knew Anderson.
 {¶ 18} The trial court found Anderson guilty on two counts of aggravated burglary, two counts of aggravated robbery, kidnaping, and having a weapon while under a disability, but not guilty on all remaining counts. Hall was found guilty on all counts as charged in the indictment by the trial court.
 {¶ 19} Anderson was sentenced to the minimum sentence of concurrent three years on each count of aggravated robbery, aggravated burglary, and kidnaping, and to six months for having a weapon while under a disability. The firearm specifications were merged, and he was sentenced to a single three-year term to run prior to, and consecutive with, the sentences imposed for the underlying offenses for a total six years of incarceration. The six-year sentence imposed in this case was further ordered to run consecutively to the sentences imposed in CR433661 and CR436005, which are unrelated cases and not relevant to this appeal.
 {¶ 20} Anderson brings this appeal alleging two assignments of error. We will address the appellant's second assignment of error first.
 {¶ 21} "II. The defendant was denied effective assistance of counsel."
 {¶ 22} In his second assignment of error, Anderson argues his defense counsel was ineffective when he failed to file a motion to suppress the pretrial identification evidence when there was little, if any, other evidence to support his convictions. He claims that, because the pretrial photo identification was made ten months after the crime occurred, along with the fact that the accomplice wore a ski mask, the testimony regarding his identification was impermissibly suggestive and should have been suppressed.
 {¶ 23} In Ohio, when reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98,477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 24} In order to substantiate a claim on the basis of ineffective assistance of counsel, the defendant must show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Jones (2001),91 Ohio St.3d 335, 354, 744 N.E.2d 1163, citing Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, L.Ed.2d 674. To show such prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
 {¶ 25} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'"Strickland, supra, at 691.
 {¶ 26} The Supreme Court of Ohio in State v. Wogenstahl
(1996), 75 Ohio St.3d 344, 363, 662 N.E.2d 311, held "* * * where a witness has been confronted by a suspect before trial, that witness's identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances." Manson v. Brathwaite (1977),432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.
 {¶ 27} Reliability is the key in determining the admissibility of identification testimony. The United States Supreme Court established the following five factors to determine reliability: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil v. Biggers (1972),409 U.S. 188, 199-200.
 {¶ 28} However, even assuming a pretrial identification procedure is impermissibly suggestive, an in-court identification is permissible where the prosecution establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime. State v. Jenkins
(Jan. 15, 2004), Cuyahoga App. No. 82622.
 {¶ 29} In the instant matter, we disagree with the appellant's assertion that his trial counsel was ineffective for failing to file a motion to suppress the pretrial photo identification evidence as being impermissibly suggestive.
 {¶ 30} First, Pratt had an ample amount of time to view the appellant during the commission of the crime. The victim testified she was able to view the accomplice for 20 to 30 minutes in a well illuminated bedroom. She also stated she was within four to six feet of the appellant during most of the incident, and she paid considerable attention to the accomplice during the commission of the crime and tried to study each of the perpetrator's faces. She told Detective Riedenthaler that she could see most of the accomplice's face because the mask was" wide open in the front," and that she could identify the slim, darker-skinned man if she saw him again.
 {¶ 31} Her prior description of the second perpetrator accurately matched Anderson. She noted that the perpetrator had "bad skin around the eyes, like from acne," a fact corroborated by Detective Riedenthaler at trial who actually looked at Anderson's face.
 {¶ 32} The only discrepancy in Pratt's description of the accomplice was in estimating his height. Both she and her nephew had believed that the second perpetrator looked to be at least two to four inches taller than Hall. At trial, both Anderson and Hall were the same height, approximately five foot, ten inches. However, the victim stated that Hall and the second perpetrator never stood next to each other during the crime, and because Hall had a thicker, more muscular build, it seemed as if he was the shorter of the two. She stated that the accomplice was very slim compared to Hall, which made him seem taller. Lastly, the victim identified the appellant in the photo array in February 2002, ten months after the commission of the crime.
 {¶ 33} After reviewing the record, we find that Pratt's identification of Anderson was reliable under the totality of the circumstances under the test set forth in Neil v. Biggers,
supra. Consequently we find that the trial court would not have granted a motion to suppress Pratt's pretrial identification because it was reliable. She selected Anderson's photograph without suggestion or help, and there is no dispute that the photo array was a fair representation of possible suspects based on the victim's descriptions; therefore, we find that Anderson's counsel was not deficient in his representation for not filing a motion to suppress the pretrial photo array and overrule his first assignment of error.
 {¶ 34} "I. The verdict of the trial court was against the manifest weight of the evidence."
 {¶ 35} In his first assignment of error, Anderson claims the victim's identification testimony was so unreliable as to make the trial court's verdict of guilty against the manifest weight of the evidence.
 {¶ 36} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 37} In reviewing whether a conviction is against the manifest weight of the evidence, the court, considering the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,
supra.
 {¶ 38} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 39} At trial, Detective Riedenthaler testified that through his investigations, he identified two possible suspects, Hall and a man named "Terry." When Anderson was questioned by the Detective, he admitted knowing Hall, and Pratt identified him in a photo array out of eight possible suspects and also made an in-court identification. Williams testified that Anderson's build and skin tone matched that of the second perpetrator who was in his aunt's house on April 15.
 {¶ 40} Because we find that Pratt's identification of Anderson is reliable, we overrule the first assignment of error and find that his conviction is not against the manifest weight of the evidence.
Judgement affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Karpinski, J., concur.