OPINION *Page 2 
{¶ 1} Defendant-appellant Lee Crager ("Crager") appeals the judgment of the Marion County Court of Common Pleas, sentencing him upon his convictions for aggravated murder and aggravated burglary. For the reasons that follow, the judgment is affirmed in part and reversed in part.
 {¶ 2} On the evening of April 10, 2004, the body of Esta Boyd ("Boyd") was found in the bedroom of her home by her daughter-in-law, Cindy Boyd ("Boyd"). The body was found lying on the bed in a pool of blood. Pieces of dark colored glass surrounded the bed. Additionally, blood was found all around the bed on the walls, floor, and bedding. An autopsy revealed that the victim had suffered multiple blows to the head which caused hemorrhaging. The autopsy also revealed that the victim had been dead for two to four days prior to being found.
 {¶ 3} Due to a stroke, Boyd did not get around well, causing her to spend a lot of time in bed. When she received visitors, Boyd would either socialize in the kitchen or in her bedroom, where she had a chair for her visitors to sit while they socialized. The victim lived alone in the home, but there was an upstairs apartment as well as an efficiency apartment attached to her house.
 {¶ 4} The police found a pack of cigarettes and an ashtray containing partially smoked cigarettes by the chair in the victim's bedroom. Additionally, an empty sixteen ounce Old Milwaukee's Best beer can was found on the victim's *Page 3 
nightstand, another empty beer can was found on the coffee table in the living room and four empty beer cans and an empty whiskey bottle were found in the trash can on the back porch. The police seized all of the above items for analysis, and each was tested for fingerprints. The only identifiable print was found on one of the beer cans found in the trash. That print was identified as belonging to Crager. In addition, two palm prints were recovered from a mirror in Boyd's bedroom. Those prints were identified as belonging to Crager.
 {¶ 5} The police found a cordless phone on the floor next to the chair in Boyd's bedroom. An examination of the caller id showed an incoming call from Richard Crager ("Richard") at 8:42 p.m. on April 7, 2004. Richard was a former tenant and boyfriend of Boyd and is the father of Crager. Upon pressing the redial button, the police learned that the last number called was to the Marion Area Counseling Center. Records from the phone company showed that several calls were also placed from the victim's phone to "phone sex" numbers on April 8, 2004, at 3:51 a.m., 10:04 a.m., 1:06 p.m. and 1:08 p.m. The cordless phone was tested for fingerprints, but no identifiable prints were found on the phone.
 {¶ 6} During their investigation, the police determined that the last time the victim was seen alive was on the night of April 7, 2004. Cindy told the police that she had last seen Boyd alive on April 7, 2004, at approximately 3:45 p.m. or 4:00 p.m. Kelly Mulvaine ("Mulvaine"), who cleaned the efficiency apartment, *Page 4 
remembered hearing Boyd's voice at approximately 6:00 p.m. on April 7, while she was cleaning. Additionally, Mulvaine had answered a phone call from Boyd at approximately 8:44 p.m. on April 7. Tim Loper ("Loper") stated that he called Boyd about renting the efficiency apartment on April 7, at approximately 7:30 p.m. or 8:00 p.m. He testified that when he called Boyd, she stated that, "she was sitting there talking to Lee." Loper understood this to mean Crager. Finally, Loper stated that he had seen Crager walking down the street towards Boyd's house with a bag in his hand.
 {¶ 7} On April 8, 2004, Boyd failed to show up for her weekly hair appointment. Sharon Callahan, the victim's hair dresser of thirty-seven years, testified that Boyd rarely missed her hair appointments. Kenneth Smith, who wanted to buy a car from Boyd, testified that he stopped by her house the afternoon of April 8, and that Boyd did not answer the door. On April 9, 2004, John Martin, a florist, testified that he delivered flowers to Boyd's home. He stated that he knocked on the door, but no one answered.
 {¶ 8} Based on Loper's phone call with the victim, Crager became a suspect in her case. The police determined that Crager had checked into the Marion Homeless Shelter at approximately 3:00 p.m. on April 6, 2004. He went to the Marion Area Counseling Center on the morning of April 7. At *Page 5 
approximately 4:30 p.m., Crager returned to the shelter; however, he did not stay at the shelter on the night of April 7.
 {¶ 9} At approximately noon on April 8, Crager called the Marion Area Counseling Center to set up an appointment for 3:00 p.m., but failed to keep that appointment. Later that night, Crager was arrested for not paying his tab at a local restaurant. The police noticed blood on Crager's jeans and knuckles at the time of the arrest. The police also observed several scratch marks on Crager's arms. Crager's clothes were collected and submitted for analysis. Testing identified the substance on Crager's clothing as blood. DNA testing of Crager's jeans and a shirt showed a mixture of profiles, which were identified as being consistent with Crager's DNA and Boyd's DNA. DNA testing of a ring worn by Boyd also showed a mixture of profiles, which were identified as being consistent with those of Crager and Boyd. Finally, DNA testing on three of cigarettes found in Boyd's bedroom showed a mixture of profiles, which were also identified as being consistent with those of Crager and Boyd.
 {¶ 10} In May of 2004, Crager was indicted for one count of aggravated murder in violation of R.C. 2903.01(B)(2), a felony of the first degree, one count of murder in violation of R.C. 2903.02(B), a felony of the first degree, and one count of aggravated burglary in violation of R.C. 2911.05(A), a felony of the first degree. The matter was originally set for trial on July 6, 2004. In July of 2004, *Page 6 
the trial court granted Crager's motion to continue and the matter was continued to September 13, 2004. On September 7, 2004, Crager again asked the trial court that the trial be continued in an oral motion before the trial court. On September 9, 2004, Crager filed a written motion to continue, claiming he was not prepared for trial and that his investigator was attempting to find a witness who may have been involved in the murder. The trial court denied both Crager's oral and written motions. On September 10, 2004, Crager filed an amended/supplemental motion to continue. The amended motion contained an affidavit from his investigator, stating that he was attempting to locate a possible alibi witness, who may be in Toronto, Canada. The trial court again denied Crager's motion to continue. Finally, on the morning of trial, Crager's counsel put on the record a continuing objection to the trial being held, stating that he had insufficient time to prepare for Crager's trial. Crager's motion was again denied.
 {¶ 11} At trial, the State presented forty-four witnesses; the defense did not present any witnesses. On September 16, 2004, the jury found Crager guilty on all three counts of the indictment. Subsequently, the trial court found that aggravated murder and murder were allied offenses. The trial court entered judgments of guilty for aggravated murder and aggravated burglary; however, no conviction was entered for the second count, murder as it was determined to be a lesser *Page 7 
included offense of the aggravated murder charge. On September 29, 2004, the trial court sentenced Crager to an aggregate sentence of 30 years to life.
 {¶ 12} Crager appealed the conviction and sentence. This court on December 27, 2005, reversed the judgment of the trial court finding that the DNA report should not have been admitted as evidence. The State appealed that judgment to the Supreme Court. On December 27, 2007, the Supreme Court of Ohio reversed the judgment of this court and remanded the case for further review. Thus, the following assignments of error are now before this court.
 First Assignment of Error The trial court erred to the prejudice of [Crager] by denying his motions to continue the trial.
 Second Assignment of Error The trial court erred to the prejudice of [Crager] by admitting the report of Jennifer Duvall and permitting Steve Weichman to testify regarding the DNA testing performed by Jennifer Duvall.
 Third Assignment of Error [Crager] received prejudicially ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights, as well as his rights under Section 10, Article 1, Ohio Constitution.
 Fourth Assignment of Error The trial court abused its discretion and violated the Constitution of the United States when it sentenced [Crager] based on findings not reflected in the jury's verdict or admitted by [Crager]. *Page 8 
 {¶ 13} In the first assignment of error, Crager claims that the trial court erred by denying his motions for continuance. The decision whether to grant a continuance of a trial is within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of that discretion. State v. Jones, 91 Ohio St.3d 335, 2001-Ohio-57,744 N.E.2d 1163. An abuse of discretion is more than an error in judgment.State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. An abuse of discretion is an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. Id. "In evaluating a motion for a continuance, a trial court should consider, inter alia, the length of the delay requested; the inconvenience to the litigants, witnesses, opposing counsel, and the court; and whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived."Jones at ¶ 28.
 {¶ 14} Crager claims that he was prejudiced by the denial. Crager requested the continuance in order to show that another individual was involved in the actual murder of Boyd. Thus, Crager sought additional time to contact a "key witness" who would be returning to Ohio in October. However, Crager did not proffer the evidence of the alleged key witness which would permit this court to determine how the absence of the witness was prejudicial. In his appellate brief, Crager argues that this witness could corroborate facts that would assist the *Page 9 
defense in proving that another individual was involved in the actual murder. At the hearing on the motion, counsel for Crager argued as follows.
 Counsel: We have, as I have indicated previously to the Court, been unable to prepare or appropriately develop our complete theory of what happened back in April in this case. And as a result we're not prepared to go forward. And I reemphasize that because again this case, there's some ambiguity, or there's some question that we're waiving any continuance or necessity issue based on our acquiescence to move forward. The record should be clear that we do not intend to defy the Court and say we're not going forward. So we're gonnna honor the Court's directive on that issue.
 But again so the record's clear, the only reason we're proceeding is because we're told to do so, not because we're prepared to do so. There has been an issue in this case, I have said this before and I will say it again, it is our belief that another individual was involved. The extent to that involvement is unclear to us. Which is the reason why we have requested additional time to prepare. How that would affect the defense is impossible to ascertain at this moment in time. Mr. Crager was in the presence of another individual on or about the time this happened. The question is what else occurred on or about that time.
Sept. 13, 2004, Tr. 105. Crager does not argue that this additional witness will provide evidence to clear him, just that he needs additional time to prepare. However, a review of the record indicates that the trial was originally set for July 6, 2004. This date was continued at the request of Crager and rescheduled for September 13, 2004. Thus, Crager had already received a continuation of two months. Crager's argument for a second continuance did not indicate that he had made any progress towards "developing" a defense. Crager also did not claim *Page 10 
that the additional time would change things and allow him to have a defense. A review of the record indicates that the State argued that it would be prejudiced by additional delay. The State was concerned about some of its witnesses later becoming unavailable and about the inconvenience to Boyd's family who had objections to the continuance. Given the information before it, the trial court did not abuse its discretion by denying the motion for a continuance. The first assignment of error is overruled.
 {¶ 15} Crager's second assignment of error alleges that the trial court erred in allowing Steve Weichman to testify to the report of Jennifer Duvall. This assignment of error has been addressed by the Ohio Supreme Court in State v. Crager, 116 Ohio St.3d 369, 2007-Ohio-6840,879 N.E.2d 745. For the reasons stated in that opinion, the second assignment of error is overruled.
 {¶ 16} In the third assignment of error, Crager claims that his trial counsel was ineffective. Reversal of a conviction for ineffective assistance of counsel requires the appellant to show 1) counsel's performance was deficient and 2) the deficiency was so prejudicial that it deprived appellant of a fair trial. State v. Conway,109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 95, 848 N.E.2d 810. "In order to show deficient performance, [appellant] must prove that counsel's performance fell below an objective level of reasonable representation." Id. "To show *Page 11 
prejudice, [appellant] must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id.
 {¶ 17} Crager claims that his counsel was ineffective for failing to prepare for trial, failing to present an opening statement, and failing to present evidence in support of the defense's theory. A review of the record indicates that Crager's counsel represented him prior to indictment, obtained the services of an investigator, filed numerous pretrial motions, participated in pretrial hearings, participated in voir dire, and cross-examined the State's witnesses. Crager's counsel also made closing arguments. Although it is correct that counsel did not make an opening statement, this is not necessarily ineffective assistance of counsel.
 We note that "[t]he decision not to make an opening statement is viewed as a tactical decision to which a reviewing court must be highly deferential." * * * While the preferred trial court strategy may well be to make an opening statement, we cannot say that the decision by [appellant's] counsel to waive an opening statement amounts to ineffective assistance of counsel. Considering the facts and possible witnesses, counsel could reasonably have concluded that it was too uncertain for defense counsel to predict to the jury what it expected the evidence to show and then to leave the jury wondering why the predicted evidence did not materialize.
State v. Magers, 3d Dist. No. 13-03-48, 2004-Ohio-4013, ¶ 18 (citations omitted).
 {¶ 18} In this case Crager's counsel stated that he was unsure of what the defense's theory would be. At the hearing the day of trial, he still was unsure of *Page 12 
what the theory of the case was and how to best present it. Based upon this uncertainty, counsel informed the court that he would not be making an opening statement. Like in Magers, this decision was a trial tactic. Given the facts of this case, counsel could reasonably have concluded that the evidence to be presented was too uncertain to predict. Instead, counsel laid the foundation for reasonable doubt during voir dire. Additionally, even if counsel should have made an opening statement, Crager fails to identify how he was prejudiced by this failure.
 {¶ 19} Crager also claims that his counsel was ineffective for not presenting any evidence in support of its theory that someone else was present when Boyd was killed and thus could have been the person who killed her. However, Crager has not cited any evidence which could have been presented but was not. If there is no additional evidence to be presented, counsel cannot be ineffective for not presenting it. Crager has not shown that counsel's actions were below an objective standard of reasonable representation or that he was prejudiced by the representation. Therefore, the third assignment of error is overruled.
 {¶ 20} Finally, Crager claims that his sentence violates the U.S. Supreme Court's holding in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. This court notes that Crager was originally sentenced on September 29, 2004. The matter has been pending on appeal ever since. On February 27, 2006, the Ohio Supreme Court issued its opinion in State v. Foster, *Page 13 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Foster held that the sentencing statutes in use at the time were unconstitutional in part and severed various sections. The Supreme Court then ordered that all cases pending on appeal would need to be reversed and remanded for resentencing. Since Crager's case was pending at the time ofFoster and directly raises the Blakely issues, the matter must be remanded for resentencing. The fourth assignment of error is sustained.
 {¶ 21} The judgment of the Court of Common Pleas of Marion County is affirmed in part and reversed in part. The matter is remanded to the trial court for resentencing.
Judgment affirmed in part, reversed in part, and cause remanded.
 PRESTON and ROGERS, JJ., concur. *Page 1